CC-98-15                                  - 1 -

En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| Jesús M. Soto Ortega<br>    Peticionario<br><br>          V.<br><br>Administración de Instituciones<br>Juveniles<br>    Recurrido | Certiorari<br><br>99 TSPR 106 |

Número del Caso: CC-1998-0015

Abogado de la Parte Peticionaria:  Lcdo. Juan M. Adorno Peña

Abogada de la Parte Recurrida:     Lcda. Nilda Carrero Nieves

Agencia: Junta de Apelaciones de Administración de Personal

Tribunal de Circuito de Apelaciones, Circuito Regional I Panel III

Juez Ponente: Hon. Ramos Buonomo

Fecha: 6/30/1999

Materia: Apelación de Decisión de Agencia Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Jesús M. Soto Ortega

    Recurrente

       v.                          CC-1998-15     Certiorari

Administración de
Instituciones Juveniles

    Recurrida

Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton

San Juan, Puerto Rico a 30 de junio de 1999.

Nos corresponde resolver si el programa de detección de uso de sustancias controladas de la Administración de Instituciones Juveniles es *ultravires*, por ser más restrictivo que la Orden Ejecutiva que autorizó su promulgación. También debemos resolver si dicho programa infringe la disposición constitucional que garantiza la igual protección ante las leyes, Const. de P.R., Sec. I, Art. II, en aquella parte que establece que cierto tipo de empleado puede ser sancionado con la destitución al arrojar un resultado positivo a una prueba de posible consumo de sustancias controladas.

## I.

Jesús M. Soto Ortega laboró desde 1993 como empleado de carrera en el Centro de Detención de Menores de Humacao, adscrito a la Administración de Instituciones Juveniles [en adelante la Administración]. Allí ocupó el puesto de Conductor de Automóviles I.

Al ser contratado, Soto Ortega fue informado sobre la política pública de la Administración de mantener un ambiente de trabajo libre de drogas y recibió copia de la Carta Normativa Número 90-004 sobre "Declaración de Política Pública para Mantener el Lugar de Trabajo de la Administración de Instituciones Juveniles Libre de Drogas". Asimismo, fue advertido sobre las sanciones a las que estaría sujeto si arrojaba un resultado positivo a una prueba de uso de sustancias controladas. Véase, Apéndice de la Petición de Certiorari, a la pág. 160.

El 1 de mayo de 1995, Soto Ortega fue sometido a pruebas para detectar su posible uso de sustancias controladas. Dichas pruebas dieron un resultado positivo al uso de la sustancia controlada conocida como cocaína. Como consecuencia de ello, la Administración le notificó su intención de destituirlo de su empleo y su sueldo.

De conformidad con el procedimiento administrativo prescrito, Soto Ortega solicitó la celebración de una vista administrativa en la cual se le permitió presentar prueba a su favor. Finalizado el desfile de prueba, el oficial examinador recomendó que la sanción fuese reducida a una suspensión de empleo y sueldo por diez (10) días. A pesar de

esta recomendación, la Administración optó por destituir permanentemente a Soto Ortega.

Inconforme, Soto Ortega apeló ante la Junta de Apelaciones del Sistema de Administración de Personal, [en adelante J.A.S.A.P.]. Luego de varios trámites, dicho foro apelativo administrativo confirmó la decisión de la Administración. De esta determinación Soto Ortega acudió ante el Tribunal de Circuito de Apelaciones, el cual confirmó a J.A.S.A.P. por estimar que la acción administrativa estaba autorizada específicamente por el reglamento de la propia agencia y que la misma no fue arbitraria, ilegal o irrazonable.

Finalmente, Soto Ortega acudió ante este Tribunal. Evaluados sus señalamientos, accedimos a revisar. Es su contención que la Orden Administrativa Núm. 92-09 del 18 de noviembre de 1992 de la Administración de Instituciones Juveniles, que establece los procedimientos para la administración de las pruebas para detectar posible uso de sustancias controladas y las sanciones que podrán ser impuestas a empleados que arrojen resultados positivos, es más restrictiva que las disposiciones ejecutivas que confirieron autoridad a las agencias administrativas a promulgar reglamentos con ese fin, (Boletín Administrativo 4784 de 9 de octubre de 1986 y Boletín Administrativo 5111-A de 26 de mayo de 1988). Aduce, en consecuencia, que la Orden Administrativa bajo la cual fue sancionado es ultra vires, además de inconstitucional al amparo de la disposición de nuestra Constitución que garantiza la igual protección ante

las leyes. En la alternativa, y como segundo señalamiento de error, aduce que la sanción que le fue impuesta fue desproporcionada e injusta, a la luz de la totalidad de las circunstancias.[1]

Examinemos sus planteamientos.

## II.

El uso y abuso de sustancias controladas constituye un serio problema en la sociedad puertorriqueña contemporánea, de cuyas consecuencias el escenario de trabajo no está inmune. Es legítimo, por tanto, el interés del Estado de establecer estrategias y programas que propendan a disuadir

---

[1] Los señalamientos de error planteados por Soto Ortega son los siguientes:

Primer error:
[E]rró el Tribunal de Circuito de Apelaciones al confirmar la acción de la JASAP y al no resolver que la destitución del recurrente fue [...] contraria a derecho en tanto y en cuanto hizo caso omiso dicho Tribunal y no resolvió la verdadera controversia sobre la cual versa el recurso, al no resolver como cuestión de derecho que la reglamentación de personal sobre el área de sustancias controladas a empleados, aprobada por la Administración, [...] constituye una disposición ilegal, en tanto y en cuanto resulta más restrictiva y en contra de las disposiciones que establece el Boletín Administrativo 4784 del 9 de octubre de 1986, enmendado por el Boletín Administrativo 5111-A, aprobado el día 26 de mayo de 1988, siendo estas últimas, las que constituyen la Ley o la base que autoriza a todas las agencias administrativas gubernamentales a reglamentar internamente sobre el asunto, no pudiendo reglamentarse fuera de estos parámetros, por lo que la actuación de la Administración al así reglamentar es ultravires.
Segundo error:
Erró tanto la JASAP como el Tribunal de Circuito de Apelaciones, al no resolver que la sanción disciplinaria impuesta es onerosa, restrictiva y/o desproporcionada e injusta dada la totalidad de las circunstancias del caso.

que los empleados públicos consuman sustancias controladas en y fuera de los centros de trabajo y que viabilicen la rehabilitación de aquellos empleados usuarios o con problemas de adicción. Estos esfuerzos, sin embargo, deben ser cónsonos con los derechos de los trabajadores y empleados de no ser privados de intereses propietarios y libertarios sin un debido proceso de ley, véanse, Nogueras v. Hernández Colón, 127 D.P.R. 638 (1991), Departamento de Recursos Naturales v. Correa, 118 D.P.R. 689 (1987), y a que no se infrinja su intimidad irrazonablemente, Arroyo v. Rattan Specialties, 117 D.P.R. 35 (1988).

En el contexto de las pruebas para detectar posible consumo de sustancias controladas por empleados públicos, el Tribunal Supremo federal ha resuelto que la intrusión corporal que supone la administración de este tipo de pruebas está sujeta a las limitaciones que impone la Cuarta Enmienda Federal. National Treasury Employees Union v. Von Raab, 489 U.S. 602 (1989) (afirmando en la pág. 617, "collection and testing of urine intrudes upon expectations of privacy that society has long recognized as reasonable"). Ello es así, aún cuando la intrusión gubernamental que representa la administración de una prueba para detectar consumo de sustancias controladas ocurre en una instancia en que el gobierno actúa como patrono. Id. en la pág. 665.

En el caso específico de pruebas administradas a los empleados, su validez constitucional al amparo de la protección contra registros y allanamientos irrazonables depende de un análisis de su razonabilidad. Id.; Chandler v.

<u>Miller</u>, 117 S.Ct. 1295 (1997); <u>Skinner</u> v. <u>Railroad Labor Executives' Association</u>, 109 S.Ct. 1402 (1989). Ello implica que al evaluar la constitucionalidad de este tipo de programa al amparo de dicha protección constitucional, los tribunales deben balancear el interés estatal que motiva el establecimiento del programa frente a la expectativa legítima de intimidad que ostenta el individuo objeto de la regulación. La intrusión a la intimidad que supone la administración de una prueba de consumo de drogas sólo se considerará razonable, y por lo tanto, constitucionalmente válida, si el interés estatal postulado, y demostrado, supera el reclamo de expectativa de intimidad individual. La mera deseabilidad de imponer un patrón de conducta entre los individuos, sin indicios concretos que sustenten la existencia de una necesidad especial, no valida una desviación del requisito de orden judicial que establece la Constitución.

En el presente caso no se ha cuestionado la validez constitucional del programa de detección de consumo de drogas de la Administración de Instituciones Juveniles bajo la Sección 10 del Artículo II de la Constitución del Estado Libre Asociado del Puerto Rico.[2] Tampoco se ha cuestionado la

---

[2] Dispone la Sección 10 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, en lo pertinente:

> No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.
> ...
> Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad

validez de la Orden Ejecutiva que autorizó su promulgación.

Nuestra intervención por lo tanto, se limita a examinar las controversias específicas planteadas por Soto Ortega: (1) si el programa establecido por la Administración de Instituciones Juveniles contraviene la Orden Ejecutiva que autorizó su promulgación; (2) si el programa atenta contra la cláusula constitucional que garantiza la igual protección ante las leyes; y (3) si la sanción que le fue impuesta fue arbitraria y caprichosa.

Dicho lo anterior, examinemos sus planteamientos.

### III.

### A.

Mediante la Orden Ejecutiva del 9 de octubre de 1986, Boletín Administrativo Núm. 4784, según enmendada por la Orden Ejecutiva del 26 de mayo de 1988, Boletín Administrativo 5111-A, el entonces Gobernador de Puerto Rico, Rafael Hernández Colón, dispuso que los funcionarios y empleados del Gobierno que prestaran servicios en el área de seguridad pública serían sometidos a un programa permanente para la detección de consumo de sustancias controladas. Art. 2 (a). Entre los empleados y funcionarios públicos cubiertos por dicha disposición se encuentran los guardias cadetes, agentes investigadores y miembros de la Policía de Puerto Rico, Art. 2(a)(1); los funcionarios y empleados de la

---

judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse. Evidencia obtenida en violación de esta sección será inadmisible en los tribunales.

División de Investigación y Procesamiento Criminal del Departamento de Justicia y del Negociado de Investigaciones Especiales, Art. 2(a)(1); los oficiales de custodia y los empleados y funcionarios que prestan servicios en las instituciones penales de la Administración de Corrección, Art. 2(a)(3); los funcionarios y empleados de la Junta de Libertad Bajo Palabra, Art. 2(a)(7); y todos los funcionarios y empleados del Servicio de Bomberos, entre otros.

Esta Orden Ejecutiva se promulgó en atención a la política pública del Estado Libre Asociado de Puerto Rico de que los empleados en el servicio público sean seleccionados, adiestrados, ascendidos y retenidos en consideración al principio del mérito y a su capacidad. Ley de Personal del Servicio Público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1975, según enmendada, 3 L.P.R.A. secs. 1301 et seq.[3] Asimismo, se enmarca dentro del reconocimiento gubernamental de que el consumo de sustancias controladas por empleados públicos vinculados a áreas de seguridad es incompatible con

---

[3] Tomamos conocimiento judicial de que la Asamblea Legislativa de Puerto Rico aprobó recientemente las leyes números 59 de 8 de agosto de 1997, 29 L.P.R.A. secs. 161 et seq.; y 78 de 14 de agosto de 1997, con el objetivo de autorizar y reglamentar la administración de pruebas para detectar consumo de drogas en el empleo privado y entre los empleados del servicio público de la rama ejecutiva, respectivamente. La Ley Núm. 78 aplica a empleados cubiertos por la Orden Ejecutiva hoy considerada por este Tribunal. Para propósitos del presente caso, sin embargo, el examen de la Orden Administrativa deberá hacerse exclusivamente a la luz de la Orden Ejecutiva que autorizó la adopción del plan, pues es ésta la disposición legal que establecía el estado de derecho en la Rama Ejecutiva al momento de los hechos pertinentes a este caso.

las normas de excelencia, integridad y eficiencia que rigen en el servicio público.

En este contexto, el Art. 3(b) de la Orden Ejecutiva destaca que el objetivo esencial de los programas de detección de sustancias controladas que autoriza es "identificar a los usuarios de sustancias controladas y[,] en la medida que sea posible[,] lograr su rehabilitación para que puedan desempeñar fielmente sus funciones y deberes en el servicio público".

Ahora bien, en cuanto a las sanciones que serán impuestas a las personas que arrojen resultados positivos a uso de sustancias controladas, el mismo artículo advierte lo siguiente:

Cuando se obtenga por primera vez un resultado positivo corroborado en un empleado o funcionario mediante una prueba para detectar la presencia de sustancias controladas, éste será referido al programa de orientación, tratamiento y rehabilitación establecido en el Artículo 5 de esta Orden y no se tomarán medidas disciplinarias en su contra, **excepto cuando la condición detectada resulte incompatible con el desempeño efectivo de las funciones y deberes del puesto que ocupa, en cuyo caso el Jefe de la agencia podrá proceder a imponer la medida disciplinaria que entienda apropiada conforme a la reglamentación aplicable**. No se tomarán medidas disciplinarias contra el funcionario o empleados que voluntariamente se someta al programa de orientación, tratamiento y rehabilitación del Departamento de Servicios Contra la Adicción, se rehabilite y se abstenga de usar ilegalmente sustancias controladas, cuando el Jefe de la agencia determine que tal condición no es incompatible con el mejor desempeño de los deberes correspondientes al cargo o empleo. El Jefe de la agencia podrá iniciar acciones disciplinarias cuando el empleado o funcionario se niegue a participar en el programa de orientación, rehabilitación y tratamiento establecido en el Art. 5 de esta Orden Ejecutiva o a someterse a las pruebas para detectar la presencia de sustancias

controladas o cuando continúe usando ilegalmente sustancias controladas. (énfasis suplido).

Como puede apreciarse, la Orden Ejecutiva advierte que ante un primer resultado positivo corroborado, el empleado o funcionario deberá ser referido a un programa de orientación y rehabilitación y no se le impondrán medidas disciplinarias. La Orden Ejecutiva, sin embargo, exceptúa de esta posibilidad a aquellos empleados cuya "condición detectada resulte incompatible con el desempeño efectivo de las funciones y deberes del puesto que ocupa". En tal caso, la Orden Ejecutiva confiere discreción al director de la agencia para adoptar mediante reglamentación la sanción que deberá ser impuesta al empleado. También, aunque dispone que no se impondrán medidas disciplinarias a las personas que voluntariamente se sometan a un programa de orientación y rehabilitación, claramente dispone que tal posibilidad resulta aplicable, en parte, "cuando el Jefe de la agencia determine que tal condición no es incompatible con el mejor desempeño de los deberes correspondientes al cargo o empleo".

La Orden Ejecutiva, sin embargo, no establece criterios para determinar cuándo la "condición detectada" es "incompatible con el desempeño efectivo de las funciones y deberes del puesto que ocupa [un empleado de la Administración]". Tampoco establece criterios que guíen a la autoridad nominadora al momento de establecer la sanción apropiada. De este modo, la Orden confiere discreción a las agencias administrativas para que, mediante reglamentación, definan los elementos específicos de cada uno de estos

aspectos del programa de administración de pruebas de detección de uso de sustancias controladas.

**B.**

Con el fin de establecer la fase operacional de la política pública plasmada en la Orden Ejecutiva antes discutida, la Administración de Instituciones Juveniles aprobó la Orden Administrativa 92-09, la cual establece las normas y procedimientos sobre medidas correctivas y disciplinarias.[4] Esta Orden, entre otras cosas, establece las sanciones disciplinarias que puede imponer la autoridad nominadora ante el incumplimiento por parte de los empleados y funcionarios de las normas de conducta establecidas. En específico, en cuanto a arrojar un resultado positivo a uso de sustancias controladas, dispone que:

> Cuando las funciones son incompatibles con el uso de drogas siempre conllevará destitución. Para efectos de la AIJ se considerará como incompatible las funciones que se presten por cualquier empleado que ejerza sus funciones en una institución, visite las instituciones con regularidad o intervenga directamente en la evaluación y/o prestación de servicios a los menores y/o familias. Orden Administrativa 92-09, Anejo, Art. V (8).

---

[4] La Administración de Instituciones Juveniles no está incluida expresamente en la Orden Ejecutiva del 9 de octubre de 1986 toda vez que la entidad fue creada con posterioridad a la promulgación de la referida Orden. Véase, Ley Núm. 154 de 5 de agosto de 1988, 8 L.P.R.A. secs. 551 et seq. Sin embargo, la agencia quedó adscrita al Departamento de Servicios Sociales, 8 L.P.R.A. sec. 552, y se le confirieron las funciones que antes realizaba la Secretaría Auxiliar de Centros de Tratamiento Social del Departamento, entidad que estaba expresamente incluida en la Orden Ejecutiva. En vista de ello, y conforme a la Opinión del Secretario de Justicia, 1989-2, la Administración de Instituciones Juveniles elaboró su programa interno de administración de pruebas para detectar sustancias controladas.

Vemos, pues, que la Orden Administrativa contempla las siguientes instancias como circunstancias que generan una situación de incompatibilidad entre el consumo de sustancias controladas y el efectivo desempeño de los deberes del puesto: (1) ejercer las funciones en una institución de menores; (2) visitar las instituciones con regularidad; o (3) intervenir directamente en la evaluación y prestación de servicios a los menores institucionalizados o sus familias.

Debe advertirse que el común denominador de estas instancias lo constituye el hecho de que, como parte del ejercicio de sus deberes, el empleado que obtenga un resultado positivo corroborado al uso de sustancias controladas tenga contacto permanente, o con alguna regularidad, con la población institucionalizada o sus familiares. De este modo, la Administración de Instituciones Juveniles, en el descargo de las funciones conferidas en la Orden Ejecutiva, delimitó las circunstancias que harían del consumo de sustancias controladas una condición incompatible con el efectivo ejercicio de las funciones del puesto.

En cuanto a las sanciones que puede imponer la autoridad nominadora, la Orden Administrativa 92-09 dispone que ante un resultado positivo al uso de drogas, "[c]uando las funciones son incompatibles con el uso de drogas[,] **siempre conllevará destitución**". Apéndice de la Petición de Certiorari, a la pág. 144 (énfasis suplido).

No hay duda de que la base legal de la Orden Administrativa es la Orden Ejecutiva promulgada por el entonces Gobernador de Puerto Rico en 1986. De este modo, el

ejercicio del poder por parte de la Administración de Instituciones Juveniles y demás entidades comprendidas en la Boletín Administrativo no puede apartarse de los parámetros de la Orden Ejecutiva. Ambas disposiciones administrativas, sin embargo, no pueden contravenir las leyes aplicables, ni mucho menos la Constitución del Estado Libre Asociado de Puerto Rico.

**IV.**

Luego del resultado positivo arrojado por Soto Ortega, la Administración de Instituciones Juveniles decidió que, conforme a la reglamentación aplicable, el efectivo ejercicio de las funciones de su puesto era incompatible con la condición detectada. Soto Ortega no ha cuestionado ante nos esta determinación. Es decir, no ha cuestionado si, a la luz de los deberes de su puesto, se satisfacen los criterios contenidos en la Orden Administrativa que harían incompatible el uso de sustancias controladas y el efectivo desempeño de las funciones de su puesto, y que por tanto, activarían la excepción a la norma general de referir al empleado a un programa de rehabilitación.

Ante nos, la contención principal de Soto Ortega consiste en que la Orden Administrativa que motivó su despido es más restrictiva que la Orden Ejecutiva a cuyo amparo fue promulgada. Al respecto, plantea que "la norma implantada por la Administración [en] el inciso v sección 8 de la Orden Administrativa #92-09 es ultra vires, ilegal y contraria a la legislación [sic]que la crea cuando [...] establece que [...] un resultado positivo al uso de drogas [...] siempre

conllevará la destitución". Petición de Certiorari, a la pág. 14 (énfasis omitido). Añade que "[e]l Reglamento de la Administración, sin ningún interés apremiante que proteger permite un irrazonable criterio donde basta [...] un mero positivo en un análisis para detectar sustancias controladas, sin nada más, para permitir su expulsión". Id. a la pág. 15 (énfasis omitido).

Amparado en lo anterior concluye que la reglamentación es caprichosa y arbitraria pues no establece categorías ni distinciones "por lo que constituye una reglamentación injustificada, con una clasificación eminentemente sospechosa y por tanto inconstitucional". Petición de Certiorari, a la pág. 16. Finalmente, destaca que la sanción disciplinaria que le fue impuesta resulta desproporcionada ante sus circunstancias específicas.

Examinemos inicialmente su planteamiento en términos de que la Orden Administrativa de la Administración de Instituciones Juveniles es más restrictiva que la Orden Ejecutiva del 9 de octubre de 1986, según enmendada, y que la misma establece una clasificación sospechosa al amparo de la disposición constitucional que garantiza la igual protección ante las leyes.

**A.**

La Orden Ejecutiva es meridianamente clara al establecer que la posibilidad de que no se imponga una medida disciplinaria está condicionada a que se trate de un empleado cuyos deberes no sean incompatibles con el uso de sustancias controladas. Contrario a la versión original, en la cual todo

empleado que arrojara un resultado positivo tendría el beneficio de ser referido a un programa de rehabilitación, en la versión enmendada y vigente, se exceptúa de esa posibilidad a los empleados incluidos en la categoría antes dicha. Es decir, en la versión vigente el Ejecutivo autorizó a las agencias a que tomaran medidas disciplinarias contra los empleados sólo en las circunstancias en que se origine la incompatibilidad aludida.

Como expresamos, la Orden Ejecutiva no definió las instancias en las que se crearía una incompatibilidad entre el consumo de sustancias controladas y el cumplimiento de las funciones de un puesto. Al no hacerlo, implícitamente confirió discreción a las agencias administrativas para que definieran mediante reglamentación tales circunstancias a la luz de sus realidades específicas y de su propia experiencia en asuntos de personal. Esto es, de acuerdo a la naturaleza de las funciones que realiza la agencia y de las responsabilidades que posee dentro del Gobierno de Puerto Rico.

Esa discreción fue ejercida por la Administración de Instituciones Juveniles al establecer en la Orden Administrativa que la incompatibilidad de funciones que exceptuarían al empleado de la posibilidad de ser referido a un programa de rehabilitación se originará cuando el empleado ejerza las funciones en una institución, visite las instituciones con regularidad o intervenga directamente en la evaluación y/o prestación de servicios a los menores y/o familias. Esta determinación fue efectuada por la

Administración de Instituciones Juveniles de acuerdo a la naturaleza de los servicios que provee a la comunidad y de sus necesidades específicas. No nos parece que al hacerlo contraviniera el tenor de la Orden Ejecutiva que autorizó su promulgación, más aún cuando ésta no contiene limitación alguna en cuanto a este aspecto.

De igual forma, el Ejecutivo confirió discreción a las agencias administrativas para que establecieran mediante reglamentación las sanciones disciplinarias aplicables a los empleados cubiertos por la excepción contemplada en la Orden Ejecutiva. En cuanto a las sanciones que podrían ser impuestas, la Administración de Instituciones Juveniles ejerció esa discreción y determinó mediante Orden Administrativa que arrojar un resultado positivo a sustancias controladas siempre acarrearía la destitución del empleado cuando aplique la excepción de incompatibilidad entre el consumo de drogas y el cumplimiento de las funciones del puesto. Esta disposición no nos parece que sea inconsecuente con el tenor de la Orden Ejecutiva. En específico, con las enmiendas incorporadas a la Orden Ejecutiva en 1988 que autorizaron que un empleado que arrojara un primer resultado positivo corroborado fuese disciplinado, quedó patente la intención del Ejecutivo de incorporar aspectos punitivos a la política pública en relación al uso de sustancias controladas en agencias vinculadas al área de seguridad pública. Ello quedó evidenciado al menos en las instancias en las que el interés del Estado en el óptimo funcionamiento de la agencia y en proveer servicios eficientes a la ciudadanía en el área

de seguridad pública cobra particular relevancia frente al objetivo rehabilitador.

La alegación de Soto Ortega en términos de que el inciso v, sección 8 de la Orden Administrativa 92-09 se aparta del principio rehabilitador que conforma la política pública, pasa por alto ese carácter punitivo que le fue expresamente incorporado al permitir que un empleado de los cobijados por la excepción pudiese ser disciplinado ante un primer resultado positivo corroborado. La destitución como única sanción, aunque drástica, se enmarca en el objetivo de garantizar que los empleados cubiertos por la excepción a la norma general de ser referidos a un programa de rehabilitación se mantengan al margen del consumo de drogas.

En vista de ello, concluimos que el inciso v, sección 8 de la Orden Administrativa 92-09 de la Administración de Instituciones Juveniles cae dentro de los parámetros de la Orden Ejecutiva a cuyo amparo fue promulgada.

**B.**

Soto Ortega plantea, además, como parte de su primer señalamiento de error, que la Orden Administrativa viola la protección constitucional que garantiza la igual protección ante las leyes al establecer que cierto tipo de empleado puede ser sancionado con la destitución al arrojar un resultado positivo a las pruebas de detección de consumo de sustancias controladas.

Como se sabe, la garantía constitucional que garantiza la igual protección ante las leyes está contenida en la Sección I del Art. II de la Constitución del Estado Libre

Asociado de Puerto Rico. Conforme a dicho mandato constitucional, al Estado le está vedado establecer, mediante legislación, normas administrativas o prácticas, clasificaciones entre las personas de forma irrazonable o brindarles un trato desigual de forma injustificada. Rodríguez Pagán v. Departamento de Servicios Sociales, 132 D.P.R 617 (1993).

Por el contrario, "[e]l Estado puede hacer clasificaciones entre las personas sin infringir dicho principio siempre y cuando la clasificación sea razonable y con miras a la consecución o protección de un interés público legítimo". Rodríguez v. E.L.A., 130 D.P.R. 562, 581 (1992); Zachry International v. Tribunal Superior, 104 D.P.R. 267 (1975).

En atención a estos principios, en nuestro ordenamiento jurídico existen dos tipos de escrutinio que permiten evaluar la constitucionalidad de clasificaciones desarrolladas por el Estado: el escrutinio estricto y el escrutinio tradicional, también denominado como deferencial o de nexo racional. El primer escrutinio, de naturaleza más riguroso, está reservado para situaciones en las que la clasificación legislativa o la práctica administrativa tiene tangencia con la dignidad del ser humano. Rodríguez v. E.L.A., supra; Rodríguez Pagán v. Departamento de Servicios Sociales, supra. Se ubican bajo esta categorías, clasificaciones por razón de raza, sexo, color, nacionalidad, nacimiento, origen o condición social, e ideas políticas o religiosas. Bajo este escrutinio la clasificación se presume inconstitucional y el Estado tiene

el peso de la prueba de demostrar la existencia de un interés apremiante que justifique la clasificación y que, además, adelanta el interés estatal postulado.

El escrutinio tradicional o de nexo racional, resulta aplicable en las demás instancias. Bajo este escrutinio la clasificación impugnada se presume constitucional y compete a la parte que la impugna demostrar que la misma es arbitraria por no existir un interés legítimo del Estado o por no existir un nexo racional entre la clasificación impugnada y un interés estatal. Zachry International v. Tribunal Superior, supra. Además, hemos destacado que cuando la legislación impugnada es de tipo económico o social, "el criterio tradicional mínimo solo exigirá que la clasificación no sea arbitraria y que la misma pueda establecer un nexo racional con los propósitos del estatuto". Rodríguez v. E.L.A., 130 D.P.R. a la pág. 582.

En el presente caso, Soto Ortega no ha definido con precisión cuál es la clasificación que impugna. La discusión general que esboza sugiere que la clasificación impugnada consiste en aquellos empleados de la Administración de Instituciones Juveniles que pueden ser sancionados con la destitución al arrojar un resultado positivo a una prueba de detección de sustancias controladas a diferencia de aquellos que pueden ser referidos a un programa de rehabilitación.

Como puede apreciarse, no nos encontramos ante una clasificación inherentemente sospechosa. Por ello, no es aplicable el escrutinio estricto que activaría la presunción de inconstitucionalidad e impondría el peso de la prueba en

el Estado. No tiene razón Soto Ortega al afirmar lo contrario. Petición de certiorari, a las págs. 15 y 16. Por lo tanto, el escrutinio aplicable es el tradicional, bajo el cual es Soto Ortega quien tiene el peso de demostrar la arbitrariedad de la clasificación.

Las alegaciones del peticionario al respecto no nos convencen. Ciertamente existe un interés estatal legítimo que subyace el esquema establecido en la Orden Administrativa y en la clasificación impugnada: evitar el consumo de sustancias controladas por empleados públicos que laboran en áreas de seguridad pública cuyas particularidades hacen incompatible el efectivo desempeño de las funciones del puesto con el consumo de sustancias controladas. La destitución como sanción aplicable a este tipo de empleado constituye un factor disuasivo para los empleados de esta agencia, quienes al ser contratados son advertidos de la política pública de la agencia en cuanto al consumo de drogas y sobre las posibles sanciones disciplinarias que les podrían ser impuestas si incurren en la conducta proscrita. Además, la destitución del empleado cumple la finalidad de evitar que personas que consumen sustancias controladas tengan contacto directo con los menores institucionalizados y sus familiares. Se establece así el nexo racional que derrota la alegación de arbitrariedad para propósitos de la garantía constitucional de igual protección ante las leyes.

**V.**

Como segundo señalamiento de error, Soto Ortega plantea que erró el foro apelativo al sostener una acción disciplinaria que resulta onerosa para el peticionario a la luz de sus circunstancias. Aduce que es un empleado público con un historial de personal impecable que no justifica la sanción impuesta.

Notamos que la disposición de la Orden Administrativa es eminentemente clara: ante un resultado positivo a una prueba de sustancias controladas la única sanción es la destitución del empleado. No creemos, como concluimos antes, que tal sanción sea arbitraria o caprichosa en el caso específico de los empleados sujetos a la excepción incorporada a la Orden Ejecutiva. Todos los empleados son advertidos de la política pública de la agencia en torno al consumo de sustancias controladas y de la posibilidad de que se le impongan sanciones disciplinarias si la condición detectada en una prueba es incompatible con el efectivo desempeño de los deberes del cargo. En vista de ello, y no habiendo sido cuestionada la aplicabilidad de la excepción a Soto Ortega a la luz de la forma en que la Administración de Instituciones Juveniles definió la incompatibilidad entre el consumo de drogas y el efectivo desempeño de las funciones de un puesto, ni la constitucionalidad de la Orden Ejecutiva que autorizó el establecimiento del programa de detección de uso de sustancias controladas en la Administración, no nos queda sino sostener la determinación de la agencia por ser la

sanción que corresponde aplicarle conforme a la Orden Administrativa.

Se emitirá la correspondiente Sentencia.


                                Federico Hernández Denton
                                     Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Jesús M. Soto Ortega

    Recurrente


       v.                    CC-1998-15    Certiorari

Administración de
Instituciones Juveniles

    Recurrida


SENTENCIA


San Juan, Puerto Rico a 30 de junio de 1999.


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, y habiendo sido expedido previamente el auto de certiorari, se confirma la Sentencia emitida por el Tribunal de Circuito de Apelaciones - Circuito Regional I de San Juan en el caso Soto Ortega v. Administración de Instituciones Juveniles, Civil Núm. KLAN-98-0134.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri emitió Opinión Disidente a la cual se unió la Juez Asociada señora Naveira de Rodón.


Isabel Llompart Zeno
Secretaria Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Jesús M. Soto Ortega

    Recurrente


       vs.                          CC-1998-15      Certiorari

Administración de Insti-
tuciones Juveniles

    Recurrida


    Opinión Disidente emitida por el Juez Asociado señor FUSTER BERLINGERI, a la cual se une la Juez Asociada señora NAVEIRA DE RODON.


San Juan, Puerto Rico, a 30 de junio de 1999.


    En el caso de autos, el peticionario Soto Ortega ha impugnado que se le haya destituido de un puesto público sólo porque en una primera ocasión una prueba que se le administró dio un resultado positivo respecto al uso de sustancias controladas.

    Por la importancia y novedad del asunto ante nos, es menester examinarlo con arreglo a los varios fundamentos aducidos por el peticionario, **y a cualquier otro que sea pertinente aunque no se nos haya planteado**. Tenemos el deber de hacer "la mayor justicia de que somos capaces", por lo que debemos considerar todas las cuestiones que sean pertinentes al caso, aunque el peticionario no las haya levantado o no las haya señalado de modo palmario. Rodríguez Cruz v. Padilla Ayala, 125 D.P.R. 486, 511 (1990);

Dávila v. Valdejully, 84 D.P.R. 101 (1961). Sobre todo, debemos evitar la propensión que provocan casos como el de autos a convalidar una política administrativa que goza de popularidad, sin un análisis cabal de ésta. Véase, Arroyo v. Rattan Specialties, Inc., 117 D.P.R. 35, 57 (1986).

Para examinar propiamente el asunto ante nos, es menester comenzar con una exposición de hechos medulares del caso que surgen de los autos, pero que no aparecen narrados en la opinión mayoritaria. Veamos.

(1) El empleado destituido en el caso de autos ocupaba el puesto de **conductor-mensajero** en la Administración de Instituciones Juveniles (AIJ). De ordinario, las labores de su puesto **no daban lugar a contacto directo alguno del empleado con la población de menores a cargo de la AIJ**. Las tareas rutinarias de Soto Ortega consistían en llevar y recoger correspondencia al correo; llevar y recoger documentos y paquetes a agencias del gobierno; recoger suministros para la AIJ; y transportar funcionarios de la AIJ. En las pocas ocasiones que le tocó conducir menores a las instituciones de la AIJ, Soto Ortega lo hizo bajo la supervisión de algún funcionario de la AIJ.

(2) En los años que estuvo empleado en la AIJ antes del incidente que dio lugar a su destitución, Soto Ortega **desplegó un desempeño de excelencia en su trabajo**. Siempre estaba disponible para realizar las encomiendas que se le hacían, sin importar que éstas fueran luego de su horario regular de trabajo. Realizaba todas sus encomiendas excepcionalmente bien. Su dedicación era tal que en un motín en una de las instituciones de la AIJ, Soto Ortega sufrió lesiones en su cuerpo, por proteger la propiedad de la agencia.

(3) **Soto Ortega no era un usuario consuetudinario de drogas**. Así lo determinó expresamente el Oficial Examinador de la AIJ que tuvo a su cargo el caso de Soto Ortega.

(4) Más aun, el uso de drogas en cuestión ocurrió **una sola vez**, fuera de horas de trabajo y en un lugar que no tiene relación alguna

con su empleo durante una actividad privada en la cual el empleado compartía con amistades suyas, conforme lo admitió el propio empleado al Oficial Examinador, sin que su admisión fuese contradicha por la AIJ de modo alguno.

La acción del empleado aludida, pues, fue **un evento aislado**, totalmente desconectado de su trabajo, que de ninguna manera había afectado o afectó el desempeño de sus labores en la AIJ, donde este empleado tenía acumuladas incluso decenas de horas extras de trabajo rendido. Más aun, no obstante el carácter aislado del caso de drogas en cuestión, Soto Ortega expresó su disposición para participar en cualquier programa de orientación y rehabilitación que la AIJ ordenase.

(5) El resultado positivo en la prueba sobre sustancias controladas administrada a Soto Ortega, que dio lugar a su destitución, constituyó **la primera y única "falta"** cometida por éste en su trabajo. Por ello, el Oficial Examinador de la AIJ consideró que dicha "falta" sólo ameritaba una sanción administrativa de suspensión de empleo y sueldo por diez (10) días; y que se refiriese al empleado a algún programa de rehabilitación.


II

A la luz de los hechos narrados antes, debe cuestionarse si se justificaba en derecho la drástica medida adoptada por la AIJ de destituir al empleado en cuestión.

Como se sabe, en nuestra jurisdicción impera el principio jurídico general, de arraigo constitucional, de que las medidas disciplinarias impuestas a empleados públicos deben guardar proporción con la falta cometida. Torres Solano v. P.R.T.C., 127 D.P.R. 499, 515 (1990); Srio. del Trabajo v. ITT, 108 D.P.R. 536, 547 (1979). En particular, reiteradamente hemos resuelto que la destitución de un empleado público es un "castigo extremo", que procede únicamente cuando la falta de dicho empleado es de eminente gravedad. Rodrigo v. Tribunal Superior,

101 D.P.R. 151 (1973); Lebrón v. Junta de Personal, 100 D.P.R. 164 (1971).

Por otro lado, la propia Orden Ejecutiva que aquí nos concierne, que constituye el esquema jurídico medular para enmarcar la acción administrativa impugnada, **excluye la destitución** como sanción para empleados a quienes por **primera vez** se les detecta el uso de sustancias controladas, a menos que la "**condición detectada**" resulte incompatible con el desempeño efectivo de sus labores en el puesto que ocupa.

Al aplicar las normas aludidas en los dos párrafos anteriores a los hechos concretos de este caso, nos parece evidente que aquí **no procedía** la destitución como sanción por la falta cometida. Soto Ortega no era un adicto a drogas. **No sufría de una condición que resultara incompatible con el desempeño efectivo de sus tareas como conductor-mensajero de la agencia**. El hecho de haber usado drogas en una ocasión no representaba peligro alguno para la población a cargo de la AIJ, no sólo porque ello fue un hecho aislado, que ocurrió una sola vez fuera del trabajo, sino, además por que este conductor-mensajero no tenía contacto permanente, ni siquiera de alguna regularidad, con dicha población.

Es menester recordar que la Orden Ejecutiva referida iba dirigida de manera específica a empleados públicos que prestaran servicios precisamente **en el área de seguridad pública**. La Orden disponía que aun para tales empleados la sanción ordinaria por dar resultado positivo en una prueba sobre el uso de sustancias controladas no sería punitiva sino aquella que estuviese dirigida a la **orientación, tratamiento y rehabilitación del empleado**. Dicha Orden, además, preceptuaba distinguir los casos de primera vez, de otros casos de reiterado resultado positivo en dichas pruebas. Preceptuaba también distinguir los casos de incompatibilidad laboral de otros donde ésta no existía. No se trataba, pues, de una Orden de aplicación mecánica e indiscriminada, como la implantó la AIJ. El despido de Soto Ortega por la AIJ no correspondía de modo alguno a la letra, ni mucho menos al

espíritu, de la Orden Ejecutiva en cuestión. Constituía un castigo extremo, desproporcionado con la falta cometida, y por tanto ilícito y contrario a las normas establecidas en nuestra jurisprudencia.

### III

La orden administrativa de la AIJ mediante la cual se implantó la Orden Ejecutiva referida, **es claramente contraria a ésta**, al disponer como sanción única la destitución del empleado cuando haya un resultado positivo a una prueba de sustancias controladas. La orden administrativa en cuestión es claramente de naturaleza punitiva. Hace caso omiso del eminente propósito remedial y rehabilitativo de la Orden Ejecutiva; además, invierte el entramado normativo de ésta, al ordenar como sanción invariable lo que en la Orden Ejecutiva se prevee como sanción de excepción.

Es evidente el propósito de la orden administrativa de tratar "con mano dura" indiscriminadamente a cualquier empleado de la agencia a quien se le haya detectado el uso de drogas. Refleja de este modo la difundida noción de que el uso y la adicción a las sustancias controladas se combaten eficazmente con severas medidas de represión. Tal noción, tan favorita de burócratas y de políticos dados a manipular los justificados temores de la gente, está totalmente desacreditada en los círculos científicos y entre los profesionales de la conducta humana. No debe este Alto Foro darle visos de seriedad a la referida noción sobre la "mano dura", como lo hace al convalidar la destitución de Soto Ortega. Un mal servicio se le hace a la comunidad al ayudar a perpetuar con esta decisión el mito estéril y opresivo que propugna la punición como medio efectivo para luchar contra la adicción, en lugar de denunciarlo y condenarlo como corresponde. Recientemente, en ocasión de la graduación de 26 participantes del programa integral de Salas de Drogas que opera en el Centro Judicial de San Juan, el Juez Presidente de este Tribunal expresó que

"Para la Rama Judicial [esta ocasión] constituye la validación de un esfuerzo concertado con otras agencias para atender el problema de la droga... en una forma distinta a la tradicional, más sensible al ser humano que es víctima de lo que hoy conocemos como una enfermedad."

Es precisamente esta acertada visión la que este Foro ha debido recordar y hacer valer en el caso de autos.

Tampoco debe olvidar este Tribunal que el empleado destituido por la AIJ no era más que un humilde padre de familia, único sostén de su hogar. Ha debido aplicarse a esta situación la reflexión normativa de este Tribunal en Srio. de Trabajo v. ITT, supra, que acogemos esencialmente, modificándola para ajustarla a los hechos del caso de autos.

Para el trabajador común, partícipe menor en los frutos sociales, para quien no hay liquidación de dividendos, ni beneficios, ni intereses acumulados en la digna faena de ganar con su esfuerzo el pan que parte en la mesa con los suyos, para quien el ahorro es ilusión devorada por la estrechez, el despido indiscriminado es un evento nefasto carente de la justicia social debida a la persona como factor de producción. El desempleo condena a un ser humano y a su familia al hambre o a la indignidad. Por ello, grave ha de ser una falta para que por ella se justifique cancelar los modestos salarios del trabajador destinados a sostener su familia, y sin los cuales se crea el riesgo de convertirse en carga del Estado. Cristalina debe ser la justificación que se ofrezca para despedirlo drásticamente.

No absolvemos al trabajador, pero rechazamos la extrema severidad y desproporción del castigo.

Por los fundamentos expuestos, disiento del dictamen mayoritario, que considero injusto, contrario a derecho, y poco edificante.


JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO