CC-1999-100                          1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Luis E. Alicea Battle<br>Luis Alicea Morales<br>      Demandantes-Peticionarios<br><br>      v.<br><br>Administración de Servicios Médicos de Puerto Rico<br>(ASEM) y otros<br>      Demandados-Recurridos | Certiorari<br><br>2000 TSPR 157 |
| --- | --- |

Número del Caso: CC-1996-100

Fecha: 26/octubre/2000

Tribunal de Circuito de Apelaciones:

                    Circuito Regional I

Juez Ponente:

                    Hon. José E. Broco Oliveras

Abogados de la Parte Demandantes-Peticionarios:

                    Lcdo. Efraín Maceira Ortiz
                    Lcdo. Ángel L. Rivera Agosto

Oficina del Procurador General:

                    Lcda. María Astrid Hernández Martin
                    Procuradora General Auxiliar

Materia: Violación de Derechos Civiles

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis E. Alicea Batlle,
Luis Alicea Morales

     Demandantes-Recurrentes

       Vs.                          CC-1996-100          Certiorari

Administración de Servicios
Médicos de Puerto Rico (ASEM)
y otros

     Demandados-Recurridos

Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton

San Juan, Puerto Rico, a 26 de octubre de 2000.

Por entender que las actuaciones del peticionario, Luis E. Alicea Batlle, no están protegidas por la ley federal que prohíbe el discrimen en el empleo contra las personas con impedimentos, conocida como la *"Americans with Disabilities Act"*, 42 U.S.C.A. sec. 12101 et seq., ni por la Ley Núm. 44 de 2 de julio de 1985, según enmendada, 1 L.P.R.A. sec. 501 et seq., confirmamos.

**I.**

Alicea Batlle laboraba como supervisor en la Administración de Servicios Médicos de Puerto Rico (en adelante, ASEM). En diciembre de 1993                              comenzó                                              a

exhibir una conducta inapropiada en su trabajo, incurriendo en ausencias y tardanzas injustificadas. Este comportamiento motivó que ASEM implementara una sanción inicial en su contra. Sin embargo, dicho patrón de conducta continuó reflejándose por varios meses. La razón para tal comportamiento, según admitida por el propio Alicea Batlle, era que había desarrollado una adicción a drogas. En marzo de 1994, tras comunicar su problema de adicción a ASEM, Alicea Batlle ingresó en el Hogar Crea de Trujillo Alto para recibir tratamiento. El periodo de tratamiento en dicho lugar fue de un mes aproximadamente.

A raíz de estos sucesos, ASEM le formuló varios cargos administrativos a dicho empleado por violación a las normas de conducta de la institución. Esencialmente, las faltas imputadas se referían a hechos ocurridos dentro del periodo comprendido entre diciembre de 1993 y mayo de 1994. A tales efectos, las partes celebraron una reunión el 23 de mayo de 1994 para ventilar el asunto referente a los cargos.

En la reunión celebrada entre las partes, se firmó una estipulación en la que Alicea Batlle aceptó todos los cargos administrativos formulados en su contra, los cuales podrían haber conllevado su destitución. Este se comprometió a no volver a incurrir en el tipo de conducta que motivó la acción disciplinaria y a no violar los términos de la estipulación.

Por su parte, ASEM se comprometió a darle una oportunidad a dicho empleado para que se rehabilitara de su condición de drogodependencia y a dejar en suspenso las acciones disciplinarias por un periodo de dos (2) años, plazo concedido para que éste demostrara su mejoría.

En la referida estipulación se estableció que del empleado volver a incurrir en las mismas faltas imputadas se implantaría sumariamente la acción disciplinaria dejada en suspenso. Sobre el particular, Alicea Batlle se reservó el derecho a cuestionar en su día la determinación de ASEM a los efectos que la estipulación había sido violada.

A los dos (2) meses de firmar la referida estipulación, ASEM le notificó a Alicea Batlle que procedía a suspenderlo sumariamente por alegadamente haber violado los términos de la misma. En particular, le señaló que durante distintas

fechas del año 1994 había incurrido nuevamente en faltas similares a las anteriores.[1]

En la comunicación cursada para notificar la suspensión sumaria, ASEM le reiteró a Alicea Batlle que el propósito de la estipulación firmada fue dejar en suspenso las acciones disciplinarias en su contra con el objetivo de ofrecerle la oportunidad de rehabilitarse. ASEM le advirtió su derecho de presentar una apelación ante el Comité de Apelaciones de Empleados Gerenciales (en adelante, Comité de Apelaciones), limitado únicamente a cuestionar si se habían violado los términos de la estipulación. Sobre el particular, ASEM resumió su parecer de la siguiente forma:

> Esta Administración no puede tolerar actuaciones como la suya. Nuestra institución requiere el cumplimiento de las reglas de disciplina establecidas para mantener su imagen en alto y en un ambiente de trabajo sano y de respeto mutuo. El comportamiento demostrado por usted como representante de la gerencia de esta Administración es uno inaceptable y altamente reprochable, por lo que no podemos dejar pasar el mismo inadvertidamente.

Inconforme con este curso de acción, Alicea Batlle instó la apelación ante el Comité de Apelaciones. Mientras el caso estaba pendiente, el referido empleado procedió a radicar una "Moción en Solicitud de Remedio Urgente" en la cual solicitó su reinstalación inmediata por entender que, en virtud del Reglamento de Personal de ASEM, la suspensión sumaria resultaba improcedente.

Mediante resolución parcial el Comité de Apelaciones denegó el remedio solicitado. Recalcó que la destitución sumaria era parte de la estipulación firmada, por lo que no procedía reinstalarlo inmediatamente. De dicha

---

1 Específicamente, ASEM le imputó haber incurrido en las siguientes faltas:
    1) 29 de junio: ausentarse sin autorización;
    2) 6 de julio: faltarle el respeto a otro empleado al expresarle: "¿cuándo nos [podemos] ver en la calle para que con la pistola de 9 milímetros que tienes me pegues cuatro tiros en la cabeza?";
    3) 14 de julio: i) entrar al sótano a las 9:30 p.m. y quedarse dormido hasta las 4:30 a.m. sin anotar su hora de salida correspondiente; ii) suspender el trabajo sin permiso previo ni justificación; iii) incurrir en descuido y negligencia en el desempeño de los deberes de su puesto; iv) dormir en horas de trabajo;
    4) 19 de julio: dormir con los pies sobre el escritorio;
    5) 20, 21, 22 de julio: ausentarse sin notificación previa.
    Cabe resaltar que para llegar a la conclusión en el presente caso no tomamos en cuenta los nuevos cargos imputados. Nuestro análisis está limitado a examinar si las actuaciones de Alicea Batlle, que motivaron la estipulación, estaban protegidas por la "Americans with Disabilities Act", supra, y la Ley Núm. 44 de 2 de julio de 1985, supra.

resolución Alicea Batlle pidió reconsideración. Del expediente no surge que ésta fuese considerada.

Así las cosas, Alicea Batlle acudió al Tribunal de Primera Instancia alegando, *inter alia*, discrimen por impedimento. El referido foro desestimó la demanda al concluir que procedía el despido sumario de acuerdo con los términos de la estipulación. Dicho tribunal entendió que lo que procedía era que Alicea Batlle cuestionara, en una vista formal posterior, la determinación del patrono al efecto de que violó los términos de la estipulación.

Además, el foro de instancia sostuvo que Alicea Batlle no estaba cobijado por la protección de la *"Americans with Disabilities Act"* (en adelante, A.D.A.), 42 U.S.C.A. sec. 12101 et seq. En síntesis, el foro a quo esbozó su posición de la siguiente forma:

> El derecho de retención [de un] empleo [...] está condicionado al desempeño de unas labores de acuerdo a unos patrones de excelencia que redunden en beneficio de la ciudadanía que es, en última instancia[,] la receptora de los servicios del empleado público. Pobre servicio se le puede dar al pueblo si el empleado público se ausenta en exceso e injustificadamente de su trabajo, o si no cumple con sus deberes, por encontrarse bajo los efectos de narcóticos que nublen su capacidad para pensar eficientemente. La ciudadanía tiene el derecho de exigir servicios de excelencia de parte del servidor público y los administradores de la gestión pública, inclusive [ASEM], están en la obligación de asegurarse que esos servicios se rindan de acuerdo a criterios de excelencia.

De tal dictamen Alicea Batlle acudió al Tribunal de Circuito de Apelaciones. Alegó en parte, que erró el foro de instancia al determinar que no le cobijaba la protección de A.D.A. ni de la Ley Núm. 44 de 2 de julio de 1985, según enmendada, 1 L.P.R.A. sec. 501 et seq. (en adelante, Ley Núm. 44). El foro apelativo, tras analizar las contenciones de las partes, confirmó el dictamen recurrido al entender, entre otras cosas, que aunque exista protección de A.D.A. ello no impide que se despida a un empleado que no pueda desempeñar las labores de su cargo o que constituya un peligro a la propiedad o seguridad de otros. Cabe resaltar que dicho tribunal no pasó juicio sobre los méritos de los nuevos cargos imputados pues concluyó que tal asunto debía dilucidarse en el recurso pendiente ante el Comité de Apelaciones.

Inconforme con dicha decisión, el peticionario acude ante nos. En síntesis entiende que el foro apelativo erró al no determinar que sus actuaciones estaban protegidas por A.D.A. y la Ley Núm. 44. Así, impugna la estipulación que motivó su despido por entender que sus actuaciones estaban cobijadas por las referidas leyes.[2]

Luego de acoger el recurso de certiorari presentado y  examinar las comparecencias de las partes, procedemos a  resolver.

II

A) American with Disabilities Act: Ley federal que prohíbe el discrimen en el empleo contra las personas con impedimentos

La *Americans with Disabilities Act* prohíbe que un patrono discrimine contra las personas con impedimentos, 42 U.S.C.A. sec. 12112(a). Dicho estatuto expresamente dispone que una persona no gozará de protección, es decir, no se considerará "cualificada" si "actualmente está involucrada en el uso ilícito de drogas", 42 U.S.C.A. sec. 12114(a). El término "uso ilegal de drogas" significa: uso, posesión o distribución, 42 U.S.C.A. sec. 12111 (6)(a).

Como puede observarse, al expresamente excluirse del término "persona cualificada" a los usuarios actuales de drogas, se permite que los patronos cubiertos por A.D.A. se aseguren que el ambiente de trabajo sea uno libre de drogas.[3] De la misma forma, la citada disposición establece que un patrono puede exigir que empleados usuarios de drogas cumplan con las mismas normas de conducta y desempeño aplicables a otros empleados, 42 U.S.C.A. sec.

---

2 Alicea Batlle también arguye que no procedía su despido sumario en vista que es empleado de carrera. Hemos reconocido que, de ordinario, un empleado de carrera tiene derecho a una vista informal con anterioridad a ser separado de su puesto. Véase, Díaz Martínez v. Policía de Puerto Rico, 134 D.P.R. 144 (1993). Sin embargo, Alicea Batlle renunció a la misma en la estipulación al consentir a que se le despidiera sumariamente y establecer que cuestionaría la procedencia de los nuevos cargos en una vista posterior. En vista que no se nos ha puesto en condición de dilucidar si existió coacción o involuntariedad en dicha renuncia, no atendemos este asunto.

3 Equal Employment Opportunity Commission's (EEOC) Technical Assistance Manual, Sec. 8.1.

12114(C)(4). Sin embargo, aun cuando se excluye expresamente de la protección

de A.D.A. a los usuarios actuales de drogas, se establece cierta protección para

los adictos rehabilitados, 42 U.S.C.A. sec. 12114(B).[4] Veamos.

    i) <u>Uso actual de drogas</u>

    En vista de que una persona no se considera cualificada bajo A.D.A. si

está "actualmente involucrada en el uso ilegal de drogas", es de extrema

importancia precisar el alcance de la referida frase.

    A base de una interpretación literal del término "uso actual" sólo se

verificaría si <u>al momento en que se instituye la acción disciplinaria</u> la

persona utiliza drogas. No obstante, los tribunales federales han rechazado

continuamente la interpretación literal antes mencionada.[5] Han interpretado

el referido término de manera más expansiva. Así, se ha señalado que para

determinar qué constituye un "uso actual" no basta examinar el momento en que

se toma la acción disciplinaria, sino que conviene mirar el uso anterior de

---

4 Específicamente, la sección 104 de A.D.A., 42 U.S.C.A. sec. 12114, establece:
(a) Qualified individual with a disability
    For purposes of this subchapter, the term "qualified individual with a disability" shall not include any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use.
(b) Rules of construction
    Nothing in subsection (a) of this section shall be construed to exclude as a qualified individual with a disability an individual who--
    (1) has successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use;
    (2) is participating in a supervised rehabilitation program and is no longer engaging in such use; [...]
(c) Authority of covered entity
    A covered entity-
    (1) may prohibit the illegal use of drugs and the use of alcohol at the workplace by all employees;
    (2) may require that employees shall not be under the influence of alcohol or be engaging in the illegal use of drugs at the workplace;[...]
    (4) may hold an employee who engages in the illegal use of drugs or who is an alcoholic to the same qualification standards for employment or job performance and behavior that such entity holds other employees, even if any unsatisfactory performance or behavior is related to the drug use or alcoholism of such employee[.]
5 Véase, <u>Zenor v. El Paso Healthcare System, Ltd.</u>, 176 F. 3d 847, 856 (5to Circ. 1999).

drogas para determinar si a base de éste aún se puede colegir que el uso sigue siendo "actual".

Los referidos foros judiciales, al interpretar el término "uso actual" en controversias similares a la de autos, han indicado que dicho término significa que el uso ilegal de drogas ha ocurrido en fecha tan reciente como para razonablemente pensar que el problema de drogas es uno persistente.[6] Bajo tal definición se ha considerado que un uso es "actual" aunque éste haya ocurrido semanas o meses antes de que se implemente una acción disciplinaria.[7]

La mencionada interpretación literal, que limita el análisis a considerar si al momento de la acción disciplinaria se utilizaban drogas, ha sido rechazada por producir resultados absurdos y contrarios a la propia legislación. Bajo dicha interpretación se limitaría la exclusión de usuarios de drogas al ínfimo número de casos en que se encuentra a una persona utilizando drogas y en ese mismo momento se le sanciona.[8] Esta interpretación implicaría que aquellos patronos que descubran el uso de drogas en el empleo tendrán que sancionar a la persona en el momento, pues si no, se verán imposibilitados de tomar acción alguna en el futuro. Esto, ya que, si un empleado arroja un resultado positivo en una prueba de drogas y transcurre un periodo de tiempo en lo que se implementa la acción disciplinaria, bastaría con que dicho empleado interrumpiese su uso de drogas para que todas sus acciones, pasadas, presentes y futuras quedaran inmunes. Esta interpretación de la ley es insostenible.

---

6 Véase, Shafer v. Preston Memorial Hospital, 107 F.3d 274, 280 (1997), donde se afirmó: "Current" drug use means that the illegal use of drugs occurred recently enough to justify an employer's reasonable belief that involvement with drugs is an on-going problem.

7 Sobre el particular se ha establecido: "[T]he [current user] provision is not intended to be limited to persons who use drugs on the day of, or within matter of days or weeks before the employment action in question." Zenor v. El Paso Healthcare System, Ltd., supra a la pág. 856. Además, en dicho caso se afirmó: "Thus, the characterization of "currently engaging in the illegal use of drugs" is properly applied to persons who have used illegal drugs in the weeks and months preceding a negative employment action." Zenor v. El Paso Healthcare System, Ltd., Id.

8 Al respecto se ha indicado: "Indeed, under such a constrained reading of the statutory language, an employee would be considered "currently engaging in the illegal use of drugs" only if his employer discovered him needle-in-arm or bong-to-mouth and terminated him on the basis of such "current" use." Shafer v. Preston Memorial Hospital, supra a la pág. 278.

En síntesis, un uso puede ser "actual" aunque el mismo ocurra con anterioridad a una acción disciplinaria si éste aconteció en fecha tan reciente como para razonablemente concluir que el mismo es un problema existente en la persona. La periodicidad de un uso anterior (aunque se refiera a semanas o meses antes de dicha acción) es <u>relevante</u> para determinar si al momento en que la sanción se implementa el uso aún puede considerarse "actual".

Esta interpretación expansiva se caracteriza por no ser tan rígida e inflexible, de suerte que caso a caso se determine si, a base de la situación particular del empleado, se puede concluir que es un usuario "actual". Igualmente, la misma está a tono con la intención del Estado en regular el uso de drogas en el empleo y en adelantar su política pública en contra del uso de dichas sustancias.[9]

ii) <u>Protección para adictos rehabilitados</u>

Las personas adictas a drogas, que ya no se encuentran utilizando dichas sustancias y que están recibiendo tratamiento para su adicción, reciben cierta protección de A.D.A. Específicamente, la sección pertinente de A.D.A. dispone:

> Nada de lo dispuesto en la subsección (a) de esta sección [referente a la exclusión de los usuarios actuales de drogas de la protección de A.D.A.] será construido para excluir como una persona cualificada con impedimento a un individuo que:
> (1) haya completado satisfactoriamente un programa de rehabilitación de drogas supervisado y no siga involucrado en el uso ilícito de drogas, o que se haya rehabilitado satisfactoriamente de otra forma y ya no esté involucrado en tal uso;
> (2) esté participando en un programa de rehabilitación supervisado y no siga involucrado en tal uso; [...] [Traducción nuestra]; 42 U.S.C.A. sec. 12114.[10]

---

[9] Son ampliamente conocidos los esfuerzos que ha implementado el Estado para erradicar el uso y tráfico ilegal de sustancias controladas. A tales efectos véase la Ley Núm. 59 de 8 de agosto de 1997, conocida como "Ley para Reglamentar las Pruebas para la Detección de Sustancias Controladas en el Sector Privado". Igualmente, véase la legislación federal conocida como "*Drug-Free Workplace Act*" aprobada el 18 de noviembre de 1998.

[10] El texto en inglés dispone:
> Nothing in subsection (a) of this section shall be construed to exclude as a qualified individual with a disability an individual who--
> (1) has successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use;

Al igual que el término "uso actual", el alcance de la protección que se le otorga a los adictos rehabilitados ha sido objeto de estudio en distintos foros judiciales. Al respecto también se podrían destacar dos posibles interpretaciones referentes a cuál debe ser el momento para determinar si se está cobijado por la referida protección. Por un lado, una interpretación literal se limitaría a examinar si al momento de la acción disciplinaria el empleado participa de un programa de rehabilitación. De otra parte, existe una interpretación más expansiva que no considera concluyente el hecho de que el empleado esté en un programa de rehabilitación al momento de implementarse la sanción.

Reiteradamente los foros federales se han inclinado por la interpretación expansiva, indicando que el mero hecho de que un empleado ingrese a un programa de rehabilitación no le otorga la protección de A.D.A.[11] Esto pues, una interpretación literal, que se limite a examinar si al momento de la sanción el empleado se encuentra en un programa de rehabilitación, implicaría fomentar que personas adictas se liberen de responsabilidad por el mero hecho de ingresar al referido programa al momento en que se les intente disciplinar.[12] Por ello la *Equal Employment Opportunity Commission* ha señalado que un empleado que arroje un resultado positivo a una prueba de drogas no puede entrar inmediatamente a un programa de rehabilitación y evitar

---

(2) is participating in a supervised rehabilitation program and is no longer engaging in such use; [...]

[11] Zenor v. El Paso Healthcare System, Ltd., *supra* a la pág. 857.

[12] Así, se ha expresado: "[Under such interpretation] an employee discovered engaging in the illegal use of drugs could escape responsibility for his actions by immediately enrolling in a drug rehabilitation program. An employer wishing to investigate the circumstances of the employee's illegal drug use or to defer termination until a meeting of its personnel committee would be prevented from taking any employment action adverse to that employee. In short, applying [that] interpretation of the safe harbor provision would restrict the right of employers to fire drug-using employees to the narrow class of cases where the employer catches the employee *flagrante delicto* and terminates him on-the-spot. Again, such a result would be "inconsistent with [public] policy and abhorrent to the sense of justice". Shafer v. Preston Memorial Hospital, *supra* a la pág. 278.

una posible acción disciplinaria arguyendo que está rehabilitado y que ya no utiliza drogas ilegales.[13]

La protección que A.D.A. establece para adictos rehabilitados aplica cuando se ha estado en un programa de rehabilitación por un periodo prolongado y la abstención al uso de drogas ha sido extensa y no inmediata. McDaniel v. Mississippi Baptist Medical Center, 877 F. Supp. 321, 328 (S. D. Miss. 1995) confirmado en 74 F.3d 1238 (5to Circ. 1995). Esto pues, dicha protección está pensada para cobijar a individuos que han estado sin utilizar drogas por un periodo de tiempo significativo.[14] Avalar una interpretación literal de la referida protección, permitiría que ésta  cobije a empleados adictos que ingresen a programas de rehabilitación al enterarse que serán sancionados por sus acciones relacionadas al uso ilícito de drogas.

A tenor con la interpretación expansiva antes señalada, la jurisprudencia federal, consistentemente, ha excluido de la protección de A.D.A. a aquellos empleados que han utilizado drogas durante las semanas o meses antes de ser disciplinados, aunque estos hayan estado participando en un programa de rehabilitación al momento de ser sancionados. Véase, Shafer v. Preston Memorial Hospital, supra; Collings v. Longview Fibre Co., 63 F3d. 828, 832 (9no Circ. 1995), cert. denegado, 516 U.S. 1048 (1996). Esto en vista de que un empleado no puede evadir una acción disciplinaria por el mero hecho de ingresar a un programa de rehabilitación sin demostrar, primero, un periodo

---

13 A tales efectos se ha señalado: "An [...] employee who test positive for an illegal drug cannot immediately enter a drug rehabilitation program an seek to avoid the possibility of discipline or termination by claiming that s/he now is in rehabilitation and is no longer using drugs illegally." *Equal Employment Opportunity Commission's Technical Assistance Manual on the Employment Provisions (Title I) of the Americans with Disabilities Act*, sec. 8.3 (1992).

14 Zenor v. El Paso Healthcare System, Ltd., *supra* a la pág. 857.

de recuperación significativo. <u>Zenor v. El Paso Healthcare System, Ltd.</u>, *supra* a la pág. 858. Igualmente, véase <u>Wormley v. Arkla, Inc.</u>, 871 F. Supp. 1079 (E.D. Ark. 1994), donde se le denegó la protección de A.D.A. a un empleado, que violó los términos de una reinstalación condicional, a pesar de que al momento en que fue sancionado no utilizaba drogas y participaba de un programa de rehabilitación.

iii) <u>Normas de conducta y desempeño</u>

En lo referente a la capacidad de un patrono para enfrentarse a la conducta inapropiada de un empleado usuario de drogas, los tribunales han distinguido entre sancionar a una persona por virtud de su incapacidad y sancionarla por conducta inapropiada. Véase, <u>Collings v. Longview Fibre Co.</u>, *supra* a la pág. 832. Un patrono puede sancionar a un empleado por conducta inapropiada relacionada a su uso de drogas aún cuando éste haya completado un programa de rehabilitación y aunque no esté usando drogas al momento en que es disciplinado. Véase, <u>Salley v. Circuit City Stores, Inc.</u> 160 F.3d 977 (3er. Circ. 1998); <u>Accommodating Disabilities: Business Management Guide</u>, Vol. 1, sec. 1820, pág. 804 (CCH Inc.). Aunque A.D.A. proteja a ciertos usuarios de drogas, esto no significa que un patrono tenga que tolerar conducta inapropiada, tal como empleados intoxicados en su trabajo. Véase, <u>Collings v. Longview Fibre Co.</u>, *supra* a la pág. 832, citando a <u>Flynn v. Raytheon Co.</u>, 868 F. Supp. 383, 387 (D. Mass. 1994).

Más aún, la *Equal Employment Opportunity Commission* ha destacado que A.D.A. no requiere que un patrono le ofrezca a un empleado usuario de drogas la oportunidad para rehabilitarse en lugar de formular una acción disciplinaria en su contra.[15] Igualmente, se ha resaltado que los adictos no

---

15 *EEOC Technical Assistance Manual on the Employment Provisions (Title I) of the Americans with Disabilities Act*, sec. 8.7 (1992).

están exentos de cumplir con las normas de conducta establecidas, pudiendo ser sancionados por conducta inapropiada.[16]

Por tal razón, se ha indicado que un comportamiento inadecuado tal como ausentismo, tardanza y pobre desempeño causado por el uso ilegal de drogas no tiene que se aceptada por un patrono.[17] Igualmente, véase Salley v. Circuit City Stores, Inc., *supra* a la pág. 981, donde se sostuvo que una conducta inapropiada relacionada al uso de drogas es una razón legítima y no discriminatoria para disciplinar a un empleado. De la misma forma, se ha señalado que las tardanzas y ausencias excesivas, esporádicas e impredecibles convierten a un empleado en una persona no cualificada bajo A.D.A. Véase, Jackson v. Veterans Admin., 22 F. 3d 277, 278 (11mo Circ. 1994). Si la conducta inapropiada llega a niveles en que cualquier otro empleado podría ser disciplinado, entonces la sanción estaría justificada.[18]

B) Ley Núm. 44: Ley Local que Prohíbe el Discrimen Contra las Personas con Impedimentos

La Ley Núm. 44, supra, establece que no serán consideradas como personas con impedimentos: "los adictos activos al uso de drogas ilegales, según se definen éstas en la Ley de Sustancias Controladas federal." 1 L.P.R.A. sec. 501 (f)(4).

Así, se excluyen expresamente de la definición de "persona con impedimento" a los adictos activos. Claro está, esto no significa que los demás usuarios de drogas estén protegidos automáticamente por la referida

---

16 Véase, Collings v. Longview Fibre Co., *supra* a la pág. 832, citando a Litlle v. FBI, 1 F.3d 255, 259 (4to Circ. 1993), donde se estableció que: "[A]lcoholics and drug addicts are not exempt from reasonable rules of conduct, such as provisions against the possession or use of alcohol or drugs in the workplace [and] employers must be allowed to terminate their employees on account of misconduct, "irrespective of whether the employee is handicapped."

17 EEOC, *supra*, sec. 8.7.

18 Véase, Joseph W. Caldwell, Lawyers, Alcohol, Drugs and the A.D.A., W. Va. Law. 20 (1996), donde se indicó: "[I]f the misconduct rises to the level for which a non-disabled employee

legislación. Por el contrario, lo que se hace es aclarar que bajo ninguna circunstancia un adicto activo estará cobijado por la protección de la Ley Núm. 44. Le corresponderá a los tribunales determinar cuando un usuario de drogas, que no esté excluido expresamente de dicha ley, recibirá protección.

En vista que la referida legislación no precisa las circunstancias, si alguna, en que los demás usuarios de drogas recibirán protección, consideramos prudente acudir de modo ilustrativo a las disposiciones de A.D.A. antes transcritas y a su jurisprudencia interpretativa.

A la luz de esta normativa, examinemos el caso ante nuestra consideración.

III

Como previamente señalamos, el caso de autos requiere determinar si la estipulación habida entre las partes es válida. Claro está, para esto sólo pasaremos juicio sobre los hechos que motivaron la estipulación. Esto pues, los incidentes posteriores al otorgamiento de la referida estipulación no se han dilucidado aún en ningún foro.

A tenor con los pronunciamientos anteriormente esbozados, concluimos que Alicea Batlle no era una "persona cualificada" bajo A.D.A. Llegamos a tal conclusión por dos razones. Primero, a la luz del anterior trasfondo doctrinal consideramos que dicho empleado estaba "actualmente involucrado en el uso de drogas ilegales". Igualmente, entendemos que su conducta inapropiada le inhabilitaba para recibir los beneficios de A.D.A. Veamos.

A)  Uso actual de drogas ilegales

Según adelantamos, la sección 104 de A.D.A., 42 U.S.C.A. sec. 12114, excluye expresamente del término "persona cualificada" a aquellas personas que estén actualmente involucradas en el uso de drogas. Bajo A.D.A. se puede considerar que un uso es "actual" si el uso pasado fue tan reciente como para razonablemente concluir que el problema de drogas en el empleado es uno persistente. Al determinar la actualidad de un uso no hay que limitarse al momento en que se implementa la acción disciplinaria, sino que se puede

would be disciplined or discharged, then dismissal on the basis of the employee's conduct is justified".

examinar un uso pasado para dilucidar si aún éste se puede considerar actual.

En el caso de autos, el punto determinante para analizar la validez de la estipulación habida entre ASEM y Alicea Batlle es la fecha en que la misma se otorgó. Si las actuaciones que motivaron la estipulación están protegidas por A.D.A. la estipulación resultaría inválida. Veamos.

En el recurso ante nuestra consideración, el propio Alicea Batlle admitió tener un problema de adicción a drogas. A raíz del mismo incurrió en repetidas ausencias y tardanzas reflejando un pobre desempeño en su trabajo. Por espacio de seis meses, de diciembre de 1993 a mayo de 1994, Alicea Batlle reflejó un patrón injustificado de comportamiento, producto de su adicción a drogas. Ante dicha conducta inapropiada, exhibida por un tiempo prolongado y producto de una adicción a drogas, razonablemente se puede colegir que el problema de drogas de Alicea Batlle es uno corriente y "actual". El hecho de que dicho empleado haya ingresado a un programa de rehabilitación por espacio de un mes no lo hace acreedor de la protección de A.D.A.[19]

Como mencionamos, la protección de adictos rehabilitados está diseñada para aquellos casos en que se ha estado en un programa de rehabilitación por un periodo de tiempo prolongado y cuando la abstención al uso de drogas ha sido extensa y no inmediata.[20] Precisamente, en el caso de autos la abstención al uso de drogas por parte de Alicea Batlle fue inmediata y no por un periodo extenso. Permitir que usuarios de drogas reclamen la protección de A.D.A. por el mero hecho de haber interrumpido el uso de drogas, tras incurrir en conducta inadecuada, fomentaría que un patrono se vea imposibilitado de enfrentarse a un comportamiento negligente producto de una adicción.

---

19 Véase, <u>Baustian v. Lousiana</u>, 910 F. Supp. 274 (E.D. La. 1996) donde se indicó que el no utilizar drogas por siete (7) semanas no ameritaba la protección de A.D.A. aunque se estuviese en un programa de rehabilitación. Igualmente, véase <u>McDaniel v. Mississippi Baptist Medical Center</u>, *supra*, donde se señaló que el estar sin utilizar drogas por seis (6) semanas no era suficiente para alcanzar la protección de A.D.A.

20 <u>McDaniel v. Mississippi Baptist Medical Center</u>, *Id.* a la pág. 328.

La referida legislación no está diseñada para cobijar a adictos que meramente interrumpan su uso de drogas. Por el contrario, la misma supone un periodo de abstención y rehabilitación prolongado. Bajo ningún concepto podemos afirmar que ingresar a un programa de rehabilitación, tras seis meses de conducta inapropiada, e interrumpir de forma inmediata el uso de drogas, conlleva la protección de A.D.A. Ante un uso prolongado de drogas, que repercute reiteradamente en la conducta que despliega un empleado en su trabajo, no puede afirmarse que el cese inmediato de dicho uso le otorga la protección de A.D.A.

Existe una distinción entre un cese inmediato del uso de drogas, tras ser sancionado, y una abstención y rehabilitación prolongada. Claro está, dicha determinación tendrá que hacerse caso a caso a la luz de los hechos particulares que se presenten. Sin embargo, los hechos de autos (uso intenso, prolongado y que repercute en el trabajo, y un cese inmediato en el uso de drogas tras ser reprendido por la conducta), no son indicio del tipo de conducta que amerita la protección de A.D.A.

Sin lugar a dudas, el uso de drogas de Alicea Batlle fue tan recurrente como para concluir que el mismo era un problema continuo. ASEM tenía la facultad de tomar medidas para lidiar con el referido problema. Como patrono éste tiene la potestad de asegurarse que en su trabajo exista un ambiente libre de drogas. Sería contrario a la propia legislación el exigir que patronos retengan en su empleo a personas con un patrón de uso de drogas reiterado y extenso, simplemente porque al momento de implantar una medida disciplinaria estos ingresan en un programa de rehabilitación.

Tal análisis sería en extremo limitante. Implicaría que un usuario de drogas, sin importar su conducta, quedaría cobijado por A.D.A. si meramente ingresa en un programa de rehabilitación y limita su uso de drogas en el momento en que se intente formular alguna acción disciplinaria en su contra. Por virtud de tal protección, sus actuaciones pasadas, sin importar su naturaleza, quedarían inmunes.

Este sería el caso de Alicea Batlle pues, tendríamos a un empleado que, a pesar de sus problemas de adicción recurrentes y su conducta contumaz y negligente, reclama la protección de A.D.A. A la luz de la clara normativa

jurisprudencial no se puede deducir que una persona adicta a drogas, y que por espacio de seis meses incurra en conducta altamente impropia en su trabajo, esté protegida por A.D.A.

B) Conducta desplegada en el empleo

De la misma forma, la conducta contumaz y negligente en la que incurrió Alicea Batlle no puede tolerarse. A.D.A. no está diseñada para obligar a un patrono a tolerar conducta inapropiada producto de la adicción de una persona. De lo contrario, se le impondría a los patronos la carga de retener indefinidamente en su trabajo a personas adictas con problemas de conducta y que pongan en peligro la seguridad de los demás empleados.

Como señalamos, las tardanzas y ausencias excesivas, esporádicas e impredecibles convierten al empleado en una persona no cualificada bajo A.D.A. Véase, Jackson v. Veterans Admin., *supra* a la pág. 278. Resulta extremadamente oneroso y peligroso exigirle a patronos que toleren un comportamiento totalmente inadecuado debido a que una persona ingresó a un programa de rehabilitación.

Por ende, en vista de lo anterior, concluimos que las actuaciones de Alicea Batlle no estaban cobijadas por A.D.A. ni la Ley Núm. 44, ya que éste no era una persona cualificada. Así, las referidas disposiciones legales no protegían los eventos que motivaron la estipulación habida entre las partes. Sin embargo, en vista que ASEM sujetó la destitución al cumplimiento de la referida estipulación, procede devolver el caso al Comité de Apelaciones para que se dilucide si la misma fue violada por Alicea Batlle.

Se dictará la Sentencia correspondiente.


FEDERICO HERNÁNDEZ DENTON
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis E. Alicea Batlle,
Luis Alicea Morales

     Demandantes-Recurrentes

        Vs.                  CC-1996-100        Certiorari

Administración de Servicios
Médicos de Puerto Rico (ASEM)
y otros

     Demandados-Recurridos

SENTENCIA

San Juan, Puerto Rico, a 26 de octubre de 2000.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace parte íntegra de la presente, confirmamos la Sentencia dictada por el Tribunal de Circuito de Apelaciones. Se devuelve el caso al Comité de Apelaciones de Empleados Gerenciales de la Administración de Servicios Médicos de Puerto Rico (ASEM) para que continúe los procedimientos de forma compatible con la Opinión.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López emitió Opinión Concurrente. La Juez Asociada señora Naveira de Rodón emitió Opinión Disidente a la que se unió el Juez Asociado señor Fuster Berlingeri.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo

Luis E. Alicea Batlle,
Luis Alicea Morales

     Demandantes-recurrentes

        vs.               CC-1996-100     CERTIORARI

Administración de Servicios
Médicos de Puerto Rico (ASEM)
y otros

     Demandados-recurridos

OPINIÓN CONCURRENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LOPEZ

San Juan, Puerto Rico, a 26 de octubre de 2000

Analizadas las fundamentadas Opiniones circuladas en el presente caso por los compañeros Jueces Asociados señor Hernández Denton y señora Naveira de Rodón, lamentablemente no podemos suscribir ni la una ni la otra. Ello por razón de que ambas ponencias innecesariamente se involucran en un detallado examen y análisis de las disposiciones de la American with Disabilities Act, 42 U.S.C.A. sec. 12101 et seq., legislación federal que regula el discrimen en el empleo contra personas con impedimentos y de las disposiciones de la Ley Número 44 del 2 de julio de 1985, 1 L.P.R.A. sec. 501 et seq., legislación local que reglamenta el campo; leyes que no son pertinentes, ni aplicables, a los hechos

particulares del caso que hoy ocupa nuestra atención. Veamos.

I

El peticionario Luis E. Alicea Batlle era empleado de la Administración de Servicios Médicos de Puerto Rico (ASEM). Este ocupó la posición de supervisor de servicios de edificios, la cual desempeñó satisfactoriamente hasta diciembre de 1993. A partir de esta fecha, Alicea Batlle comenzó a reflejar un patrón de conducta indebida, incurriendo en ausencias y tardanzas injustificadas. Según admitido por el referido peticionario, tal patrón de conducta se debió a problemas de adicción a drogas.

Como resultado de estos incidentes, ASEM formuló varios cargos administrativos por violación a las normas disciplinarias de la agencia contra Alicea Batlle. Con el fin de resolver este asunto, el 23 de mayo de 1994, el comité de conciliación de ASEM celebró una reunión entre las partes.21 Luego de discutido el asunto, las partes llegaron a unos acuerdos los cuales fueron recogidos en una estipulación. En ésta, el peticionario Alicea Batlle aceptó todos los cargos según fueron formulados por ASEM, los que podrían conllevar como medida disciplinaria su destitución. Además, éste renunció a su derecho a cuestionar, mediante los mecanismos provistos por el Reglamento de Personal, la justificación de la acción disciplinaria. No obstante, Alicea Batlle se reservó la prerrogativa de impugnar cualquier determinación del patrono referente a la violación de los términos y condiciones de la estipulación acordada por él.

Por su parte, ASEM accedió a ofrecerle al peticionario la oportunidad de continuar recibiendo tratamiento para resolver su problema de drogadicción y a dejar en suspenso las acciones disciplinarias por un periodo de dos (2) años. Asimismo, se estableció que el peticionario podía ser destituido sumariamente en caso de que incurriese en cualquiera de las faltas imputadas, o en caso de que violara el Reglamento de Conducta y Medidas Disciplinarias o los términos de la estipulación.

El 26 de julio de 1994, ASEM envió una carta al peticionario Alicea Batlle notificándole su decisión de destituirlo por alegadamente haber incumplido los términos de la estipulación.22 Inconforme con esta acción, Alicea Batlle recurrió al Comité de Apelaciones, alegando que la actuación de ASEM fue una discriminatoria y en violación a sus derechos; posteriormente, presentó una moción solicitando del organismo apelativo que ordenara su reinstalación hasta tanto se ventilara el caso en los méritos, petición que fue declarada no ha lugar.

---

21 El peticionario estuvo representado por la Asociación de Empleados Gerenciales de ASEM —específicamente por el señor Iván Mercado Quiles—, organización sindical de la cual era afiliado.

22 En la carta ASEM le advirtió a Alicea Batlle sobre su derecho a apelar esta decisión ante el Comité de Apelaciones del Personal Gerencial, limitado el mismo al hecho de si violó o no los términos de la estipulación.

Ante tal situación, el 10 de noviembre de 1994 Alicea Batlle presentó demanda ante la Sala Superior de San Juan del Tribunal de Primera Instancia, por violación de derecho civiles y discrimen por impedimento. Dicho foro judicial <u>desestimó</u> la acción --en virtud de una moción de desestimación presentada por ASEM-- <u>sosteniendo la validez de la estipulación firmada por las partes</u>. Resolvió, también, dicho foro judicial que el peticionario no estaba protegido por la Ley ADA ni por la Ley 44 por lo que no medió discrimen alguno. Debido a ello, concluyó dicho tribunal que el único recurso disponible para el peticionario era cuestionar la determinación del patrono al efecto de que violó los términos y condiciones de la estipulación, razón por la cual devolvió el asunto al foro administrativo.

De esta sentencia apeló Alicea Batlle ante el Tribunal de Circuito de Apelaciones, señalando que el tribunal de instancia había errado al resolver (1) que la estipulación era válida y (2) que no estaba cobijado por la Ley ADA ni la Ley 44. El foro apelativo intermedio confirmó la decisión del tribunal de instancia, expresando que el peticionario podía ser destituido si no estaba capacitado para realizar las tareas de su puesto de forma responsable o ajustarse a las normas de trabajo de ASEM, esto independientemente de la protección de la Ley ADA y la Ley 44. De esta decisión, Alicea Batlle recurrió ante este Tribunal señalando, en esencia, los mismos errores.

II

La transacción, según definida por el Código Civil, es "<u>un contrato</u> por el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado". (Énfasis nuestro) 31 L.P.R.A. sec. 4821. En principio, para que un contrato pueda clasificarse como uno de transacción debe existir una controversia entre dos o más personas y concesiones recíprocas entre éstas. <u>Neca Mortg. Corp.</u> v. <u>A & W Dev. S.E.</u>, 137 D.P.R. 860, 870 (1995). Por tal razón, una estipulación donde estén presentes ambos elementos será considerada una transacción. Véase <u>Sucn. Román</u> v. <u>Shelga Corp.</u>, 111 D.P.R. 782 (1981).23

Como todo contrato, <u>una transacción válida tendrá fuerza de ley entre las partes</u>. Debido a ello, un tribunal <u>no</u> podrá relevar a una parte de cumplir con lo acordado en una transacción, cuando ésta es legal y válida, y no contiene vicio alguno. Art. 1044 del Código Civil, 31 L.P.R.A. sec. 2994; <u>García</u> v. <u>World Wide Entmt. Co.</u>, 132 D.P.R. 378, 384 (1992).

Podrá ser objeto de un contrato de transacción la renuncia de <u>cualquier derecho</u> que posean las partes. Art. 31 L.P.R.A. sec. 4826. Al respecto, la norma general es que todos los derechos son renunciables --aun los garantizados por nuestra Constitución-- excepto cuando la renuncia sea contraria a la ley, la moral o el orden público, o en perjuicio de

---

23 Es importante aclarar que una estipulación no implica necesariamente la existencia de una transacción. Para ello, es indispensable que concurran

terceros. Artículo 4 del Código Civil, 31 L.P.R.A. sec. 4.24 Se entenderá que una renuncia es contraria a la ley, cuando el legislador <u>expresamente</u> <u>prohíba o limite dicha prerrogativa</u>. Véase: <u>Ponce Gas Service Corp.</u> v. <u>J.R.T.</u>, 104 D.P.R. 698, 702-703 (1976).

Para que tal renuncia sea válida, deberán concurrir los siguientes elementos: la existencia de un derecho, el conocimiento de tal derecho y la intención de abandonarlo. <u>Fenning</u> v. <u>Tribunal Superior</u>, 96 D.P.R. 615, 622 (1968). Además, la renuncia, ya sea expresa o tácita, deberá ser clara, terminante, explícita e inequívoca. <u>Eastern Sands, Inc.</u> v. <u>Roig Commercial Bank</u>, res. el 9 de mayo de 1996, 140 D.P.R. ___ (1996), 96 JTS 65, pág. 1058. En el caso particular de derechos constitucionales fundamentales, los cuales, repetimos, también son renunciables, se requerirá que ésta sea expresa, voluntaria y efectuada con pleno conocimiento de causa. <u>Pueblo en Interés del Menor R.G.G.</u>, 123 D.P.R. 443, 465 (1989); <u>Pagán Hernández</u> v. <u>U.P.R.</u>, 107 D.P.R. 720, 738 (1978).


III

En el caso ante nuestra consideración, las partes suscribieron una estipulación la cual recoge los acuerdos efectuados. En esencia, dicha estipulación constituye una transacción, pues (1) puso fin a la controversia existente entre las partes y (2) mediaron concesiones recíprocas entre éstas. Sobre la validez de este acuerdo, el peticionario sostiene que es nulo por ser contrario a la ley --específicamente la Ley ADA y la Ley 44-- y por violar el debido proceso de ley. <u>No le asiste razón</u>.

Como indicáramos anteriormente, para que una renuncia sea contraria a la ley la misma tiene que estar prohibida o limitada por alguna legislación. Tal no es el caso de la Ley ADA ni de la Ley 44, pues ninguna de ellas impide que una persona protegida pueda ejercer tal facultad. Además, <u>ambos estatutos aplican solamente cuando la actuación del patrono o de la entidad esté basada en la incapacidad de la persona</u>.25

En el caso de autos los actos imputados al peticionario <u>no</u> están relacionados con la supuesta incapacidad, pues consisten en haber violado las normas disciplinarias de la agencia,

---

los requisitos antes señalados. Véase <u>P.R. Glass Corp.</u> v. <u>Tribunal Superior</u>, 103 D.P.R. 223, 231 (1975).
24 Esta norma responde al principio contractual de la voluntad de las partes. Véanse <u>Ponce Gas service Corp.</u> v. <u>J.R.T.</u>, 104 D.P.R. 698, 702 (1976); <u>Plaza del Rey, Inc.</u> v. <u>Registrador</u>, 133 D.P.R. 188, 192-93 (1993).

25 En este sentido, se ha resuelto que para una persona establecer violación al Título II de la Ley ADA --sobre servicios públicos-- deberá probar, entre otras cosas, <u>que el discrimen fue motivado por la incapacidad de la persona</u>. <u>Tyler</u> v. <u>City of Manhattan</u>, 857 F.Supp. 800, 817

(1994); <u>Rogers</u> v. <u>Department of Health and Environmental Control</u>, 985 F.Supp. 635, 638 (1997). Igualmente, la Ley 44 prohíbe que las instituciones públicas o privadas discriminen en el empleo "contra personas con algún tipo de impedimento físico, mental o sensorial <u>por el mero hecho de tal impedimento</u>". 1 L.P.R.A. sec. 505.

las cuales son de aplicación a todos los empleados.26 Debido a ello, independientemente de que estuviese protegido o no por la Ley ADA o por la Ley 44, el peticionario Alicea Batlle estaba obligado a cumplir con las normas disciplinarias de la agencia.

Respecto a los requisitos establecidos para que una renuncia sea válida, no queda duda de que todos están presentes en la referida estipulación. Según surge de ésta, la renuncia fue expresa, clara, voluntaria, con conocimiento del derecho renunciado y de los efectos de dicha acción. Por consiguiente, no podemos relevar al peticionario de cumplir con lo que se obligó voluntariamente por ser legal la transacción. Finalmente, debemos señalar que la incapacidad aducida por el peticionario no interfiere con su capacidad mental para haber hecho una renuncia válida y consciente.

Por ser válido el contrato de transacción, consideramos innecesarias las expresiones de este Tribunal en cuanto a la Ley ADA y la Ley 44 por ser inaplicables al caso de autos. Confirmaríamos, en consecuencia, tanto la sentencia emitida en el caso por el Tribunal de Circuito de Apelaciones como la emitida por el Tribunal de instancia; devolviendo el asunto al foro administrativo para que éste determine si la válida estipulación firmada por las partes fue, o no, violada por el peticionario Alicea Batlle.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

---

26 Tanto la Ley ADA como de la Ley 44, persiguen el propósito de proteger a ciertos grupos de personas contra el discrimen por impedimento y no el de ofrecerles una ventaja sobre los demás ciudadanos. Véanse 42 U.S.C.A. sec. 12101(b); Ríos Jaimán v. Cidra Manufacturing Operations of P.R., Inc., 98 TSPR 74, 98 JTS 73, pág. 1055.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis E. Alicea Batlle
y Luis Alicea Morales

     Apelantes y Peticionario
     el primero

                             CC-1996-100
      v.

Adm. de Servicios Médicos de
P.R. (A.S.E.M.), et als.

     Apelados y Recurridos

Opinión disidente emitida por la Juez Asociada señora Naveira de Rodón a la cual se une el Juez Asociado señor Fuster Berlingeri

San Juan, Puerto Rico, a 26 de octubre de 2000

     Hoy la mayoría ha dado muerte, por fiat judicial, a la protección que aparece en Americans with Disabilities Act (en adelante A.D.A.) a favor de las personas que están recuperándose de las condiciones relacionadas con el abuso o dependencia de sustancias. La muerte de la protección la causó una escueta interpretación de la disposición de la A.D.A, con especial menosprecio al inciso que aplica al caso de autos, a la política pública de rehabilitación que predomina en nuestra jurisdicción y a una interpretación armonizable con la Ley Núm. 44. ¡Qué miedo a una interpretación frontal e

inteligente de la A.D.A y la Ley Núm. 44 muestra la mayoría para atender efectivamente el problema laboral que representa el uso de sustancias en Puerto Rico! De luto, nos proponemos disentir.

Entendemos que las actuaciones del Sr. Luis E. Alicea Batlle configuran una de las excepciones a la exclusión general de Americans with Disabilities Act, 42 de U.S.C.A. § 12114(a)(b)(**2**), la Ley Núm. 44 de 2 de julio de 1985, 1 L.P.R.A. § 501(f) (en adelante Ley Núm. 44), y la política pública en torno a la rehabilitación de los usuarios de drogas. Por consiguiente, revocaríamos la sentencia emitida por el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito) de 27 de febrero de 1996 que a su vez confirmó la sentencia de 10 de febrero de 1995 emitida por el foro de instancia.

I

El Sr. Luis Alicea Batlle (en adelante Alicea Batlle o peticionario) era supervisor de servicios de edificios de la Administración de Servicios Médicos de Puerto Rico (en adelante A.S.E.M.) desde el 17 de febrero de 1987. Desempeñó sus labores satisfactoriamente hasta diciembre de 1993, fecha en la que comenzó a tener problemas de ausencias y tardanzas sin autorización. Por tal motivo, el señor Bofill Marini, Asistente del Director Ejecutivo (en adelante Bofill Marini o supervisor), le envió una carta de amonestación comunicándole que se le descontarían de su salario los días que se ausentó sin autorización.

A pesar de la amonestación, durante la dos primeras semanas de marzo, Alicea Batlle llegó tarde al trabajo en seis (6) ocasiones consecutivas e incurrió en abandono de servicio tres (3) veces. A principios de ese mismo mes,[27] Alicea Batlle le confesó al señor Bofill Marini que había desarrollado un problema de uso de drogas narcóticas y que tenía interés en rehabilitarse. En vista de lo anterior, A.S.E.M. le concedió una licencia sin sueldo desde el 14 de marzo de 1994.[28] Su supervisor Bofill Marini le concedió, además, permiso para que acudiera a la Clínica de Empleados el 16 de marzo de 1994. Ese mismo día se le diagnosticó abuso de drogas.[29] Así pues, comenzaron los actos del patrono que favorecían la rehabilitación del empleado.

**Con la anuencia y el conocimiento de A.S.E.M.**,[30] el peticionario ingresó voluntariamente al programa de tratamiento residencial de Hogar CREA para terminar con

---

27  Del expediente no surge la fecha exacta de este evento.

28  Este dato surge de una certificación de 16 de mayo de 1994 emitida por A.S.E.M. a través de la Sra. Carmen Sosa de Fernández, Oficina de Recursos Humanos.

29  La Dra. Flor García diagnosticó "drug abuse". Del expediente no surge cuáles eran las sustancias sujeto de abuso. El *Diagnostic and Statistical Manual of Mental Disorders*, 4th Ed., American Psychiatric Association, 1994, no contiene un diagnóstico médico titulado "drug abuse" pero sí uno titulado "substance abuse" por lo que se considerará "drug abuse" como "substance abuse".

30  Además del conocimiento de Bofill Marini sobre esta situación, en el expediente obran unas cartas dirigidas a "quien pueda interesar" por parte de la Administración de Servicios de Salud Mental y Contra la Adicción (en adelante A.S.S.M.C.A.) informando las citas para Evaluación Final y Prueba Toxicológica que el peticionario tenía. El 11 de abril de 1994, por medio de certificación dirigida a "quien pueda interesar," Hogar Crea de Trujillo Pueblo certificó que Alicea Batlle estaba recibiendo tratamiento por su condición de adicto. El 5 de mayo del mismo año Hogar Crea emitió otra certificación informando que el peticionario ingresó al Hogar Crea el 6 de abril de 1994.

su problema de abuso de drogas.31

Mientras estaba en el programa de detoxificación, Alicea Batlle recibió cinco (5) notificaciones de recomendación de acción disciplinaria basadas en las ausencias y tardanzas del mes de diciembre, por las cuales ya, como medida disciplinaria, se le había hecho un descuento del sueldo. La sanción recomendada en esas cinco (5) notificaciones, fechadas todas el 6 de abril de 1994, fue la suspensión temporera de empleo y sueldo. Al día siguiente, el 7 de abril, recibió otra notificación de recomendación de acción disciplinaria, esta vez por las tardanzas, ausencias y abandono del trabajo, ocurridas en las primeras semanas de marzo, las mismas que motivaron el inicio del programa de rehabilitación. En esta ocasión la sanción recomendada fue la destitución del empleo.

En contestación a estas seis (6) notificaciones de acción disciplinaria, el 2 de mayo de 1994, Alicea Batlle envió una carta a su supervisor recordándole los acuerdos previos habidos entre ellos sobre la autorización para someterse a un programa de rehabilitación residencial, donde todavía estaba en tratamiento. A pesar del aparente apoyo que inicialmente recibiera por parte de su patrono A.S.E.M. para superar su problema de abuso de drogas, inexplicablemente y en actuación radicalmente contradictoria, el 16 de mayo de 1994, Alicea Batlle recibió una séptima notificación de recomendación de acción disciplinaria, esta vez, debido a ausencia del trabajo desde el 31 de marzo de 1994 hasta la fecha de la notificación. Nuevamente se recomendó la destitución del empleo. Como podrá observarse, la conducta sancionada en esta séptima notificación se refiere a una fecha en que Alicea Batlle supuestamente disfrutaba de una licencia sin sueldo autorizada por la propia A.S.E.M.

Alicea Batlle completó la fase de detoxificación del programa Hogar CREA el 16 de mayo de 1994, el mismo día en que recibió la séptima notificación. El 19 de mayo, la representación legal del peticionario le indicó a Bofill Marini que al tomar acción disciplinaria contra su cliente, se estaba discriminando contra él ya que éste se encontraba en un programa de rehabilitación y no se le había hecho acomodo razonable, según lo establece A.D.A.

El 23 de mayo de 1994 se reunieron, de una parte, los representantes autorizados de la Asociación de Empleados Gerenciales y Alicea Batlle, y, de otra parte, la A.S.E.M. para dialogar la posible conciliación sobre la aplicación de acción disciplinaria. En la reunión las partes firmaron una estipulación donde el peticionario "admitió, reconoció y aceptó *todos* los cargos según fueron formulados". Además, renunció a su derecho a cuestionar mediante los mecanismos provistos en el Reglamento de Personal de A.S.E.M. la *justificación* de la acción disciplinaria. Sólo se reservó el derecho a cuestionar cualquier determinación del patrono A.S.E.M. respecto a la violación de los términos y condiciones de la estipulación. La estipulación le dio a A.S.E.M. la facultad para despedir sumariamente a Alicea Batlle. De otra parte, A.S.E.M. simplemente le concedió a Alicea Batlle la oportunidad de continuar recibiendo tratamiento para resolver su problema de abuso de drogas y *dejó en suspenso* las acciones disciplinarias por un periodo de dos años.

Dos meses más tarde, Alicea Batlle recibió una carta en la cual se le indicó que, conforme a un informe hecho por A.S.E.M., se había determinado que éste había violado la estipulación del 23 de mayo y que, por lo tanto, procedía su destitución sumaria.32 En la carta se le notificó que podía apelar su caso ante el Comité de Apelaciones de Empleados Gerenciales (en adelante el Comité) **limitada dicha apelación únicamente** al hecho de si había violado o no la estipulación. En carta del 2 de agosto de 1994, el peticionario expresó su inconformidad con la destitución

---

31  En cartas suscritas por Hogar Crea respecto al caso del señor Alicea Batlle se hizo referencia a su condición de "adicto". Como es correspondencia estándar donde sólo cambian el nombre del paciente (con alguna que otra observación escrita a mano), utilizaremos el diagnóstico hecho por la doctora de la Clínica de Empleados como el correcto. Por consiguiente, la palabra "adicto", según sea utilizada por documentos dentro del expediente, se considerará como "abuso de sustancias", al éste ser el diagnóstico médico. "Adicción" y "abuso" no son términos médicamente equivalentes. Véase, James H. Scully, *Psychiatry*, 3rd Ed., Williams & Wilkins, Baltimore, 1996, p. 141-142.

32  El informe recopilaba faltas tales como no constar su hora de salida en una (1) ocasión, dormir con los pies sobre el escritorio en una (1) ocasión, ausencias sin autorización en tres (3) ocasiones, y falta de respeto contra un empleado al decirle: 'cuándo nos podíamos ver en la calle para que con la pistola de 9 milímetro me pegues cuatro tiros en la cabeza'.

y le solicitó a A.S.E.M. todos los documentos del expediente de empleado.  Éste presentó apelación ante el Comité el 20 de septiembre de 1994 la cual fue denegada el 30 de septiembre de 1994.

Luego que el Comité denegara la reconsideración, Alicea Batlle presentó una demanda en el entonces Tribunal Superior, Sala de San Juan.  Alegó que se vio obligado a firmar la estipulación como condición para poder retener su empleo y que A.S.E.M., a sabiendas, lo dejó a la deriva a pesar de haber autorizado su ingreso a un programa de rehabilitación y de constarle que estaba asistiendo al mismo.  Solicitó la reinstalación en el puesto y daños.  Mediante sentencia de 10 de febrero de 1995, el foro de instancia desestimó la demanda.  Concluyó que a Alicea Batlle no le cobijaba la protección de A.D.A. pues la condición de adicto a drogas, aceptada por éste, no estaba cobijada por el estatuto federal y que la condición de drogodependencia no era una clasificación protegida por las Constituciones de Puerto Rico y de Estados Unidos.

Inconforme, Alicea Batlle instó apelación ante el Tribunal de Circuito el 10 de abril de 1995.  Mediante sentencia de 27 de febrero de 1996, dicho Tribunal confirmó la determinación del foro de instancia.  En lo pertinente, concluyó que a Alicea Batlle no se le privó del debido proceso de ley; que aunque A.D.A. protege a los adictos que han sido rehabilitados, no impide el despido si se determina que el empleado no puede realizar las labores de su cargo; y, que la participación en programas de rehabilitación no le protege de ser destituido si no puede desempeñar adecuadamente las funciones de su cargo.  Inconforme, Alicea Batlle acudió ante nos y alegó que las acciones disciplinarias se formularon en contravención de: (i) las disposiciones de los reglamentos de A.S.E.M. sobre procedimientos disciplinarios y los derechos de empleados de carrera, (ii) lo dispuesto en la Orden Ejecutiva sobre rehabilitación de la drogadicción de los empleados,33 (iii) el acuerdo entre el empleado y su supervisor y, (iv) lo dispuesto en A.D.A. y la Ley Núm. 44 que prohiben el discrimen por impedimento.

Iniciamos nuestro análisis con el señalamiento de error en la aplicación de A.D.A. y la Ley Núm. 44 ya que si determinamos que las actuaciones de Alicea Batlle estaban protegidas por éstas, al empleado no se le podía disciplinar –como justificaba la estipulación-- por actuaciones anteriores producto de su adicción, las cuales dieron lugar a que voluntariamente y con la anuencia del patrono, A.S.E.M., se sometiera a tratamiento.

Este señalamiento de error expone que los tribunales inferiores debieron haber determinado que a Alicea Batlle lo cobijaban las protecciones de A.D.A. y de la Ley Núm. 44, ya que éstas cubren a los empleados que están participando en un programa de rehabilitación a drogas y no están usando ilegalmente las mismas.  Estimamos que este error se cometió.  Veamos.

II

En Puerto Rico, una persona con impedimento posee dos remedios contra actuaciones discriminatorias de su patrono: (i) remedio federal bajo A.D.A.; y, (ii) el remedio local bajo la Ley Núm. 44.  <u>Rivera Flores v. Compañía ABC</u>, 138 D.P.R. 1, 5 (1995).

La protección que ofrece A.D.A. en los casos de uso de alcohol o drogas se expresa, **en lo pertinente**, en la sec. 12114, incisos(a) y (b)(2) del título 42 de U.S.C.A.:

> (a)...the term "qualified individual with a disability" **<u>shall not include</u>** any employee or applicant who is **<u>currently engaging in the illegal use of drugs</u>**,34 when the covered entity acts on the basis of such use.

---

33    Boletín Administrativo Núm. 4635-C de 4 de abril de 1986.  Dicha Orden expresa que el Departamento de Servicios contra la Adicción (ahora A.S.S.M.C.A. según la Ley Núm. 67 de 7 de agosto de 1993, 3 L.P.R.A. § 402 et seq.) está a cargo de fomentar activamente la creación de programas de ayuda ocupacional a los empleados en las instrumentalidades del Gobierno estatal y municipal.  Dispone, además, que todos los Secretarios y Secretarias del Gobierno, Jefes de Agencia y Corporaciones Públicas coordinen con el Departamento para recibir ayuda técnica necesaria para la posible implantación de un Programa de Ayuda Ocupacional.

34    "Illegal use of drugs" means the **use of drugs, the possession or distribution** of which is unlawful under the Controlled Substances Act [21 U.S.C.A. § 801 et seq.].  Such term does not include the use of a drug taken

(b)Nothing... shall be construed to exclude as a **qualified individual with a disability** an individual who—... (2) **is participating in a supervised rehabilitation program and is no longer engaging in such use**; or....(Énfasis nuestro.)

En la esfera local, la Ley Núm. 44, 1 L.P.R.A. § 501(f), establece, en lo aquí pertinente, que:

**No** serán consideradas como personas con impedimentos: ...(4) los **adictos activos al uso de drogas ilegales**, según se definen éstas en la Ley de Sustancias Controladas federal.... (Énfasis nuestro.)

Como podemos observar, en términos generales el estatuto federal exceptúa de la protección a la persona que actualmente se esté involucrando en el uso ilegal de drogas ("currently engaging in the illegal use of drugs"); el estatuto local, por su parte, excluye específicamente a los "adictos activos al uso de drogas ilegales".35

Para fines de la Ley Núm. 44, "`adicto´ significa todo individuo que **habitualmente** use cualquier droga narcótica36 de forma tal que ponga en peligro la moral, **salud**, seguridad o bienestar público o que está tan habituado al uso de las drogas narcóticas, que ha perdido el autocontrol con relación a su adicción". (Énfasis nuestro.) 24 L.P.R.A. § 2101(1).37 La disposición local no contempla a los que utilizan drogas casualmente o las transportan o distribuyen. O sea, la protección inherente en dichos estatutos no cubre, al no contemplarlos, a las personas en los grupos antes mencionados.

La palabra "activo", por otro lado, al igual que la frase "actualmente se esté involucrando" ("currently engaging") de la disposición federal, tiene una connotación de periodicidad o patrón.38 Esta connotación es de suma importancia para determinar qué personas

---

under supervision by a licensed health care professional, or other uses authorized by the Controlled Substance Act or other provisions of Federal Law. (Énfasis nuestro.) 42 U.S.C.A. § 12111(6)(A), November 21, 1991.

35 Estimamos que la exclusión local es más certera pues **el "impedimento" que cualifica bajo los estatutos analizados es la condición rehabilitada, o en proceso de estarlo, de adicción o alcoholismo** mas no la posesión o transportación de sustancias, según lo define 42 U.S.C.A. § 12111(6)(A). Véase además esc. 10.

36 Para la definición de "droga narcótica" véase, 24 L.P.R.A. § 2102(17) ó 21 U.S.C.A. § 802(17).

37 Semejante disposición aparece en el estatuto federal, 21 U.S.C.A. § 801 et seq., "addict" significa "any individual who habitually uses any narcotic drug so as to endanger the public morals, safety, or welfare, or who is so far addicted to the use of narcotic drugs as to have lost the power of self-control with reference to his addiction." 21 U.S.C.A. § 802(1). La adición de "salud" en la definición local la hace más abarcadora en cuanto a la clasificación de adicto y enfatiza su connotación terapéutica. En otras palabras, reconoce abiertamente que la condición de "adicto" es una médica.

38 Dicha connotación se refleja en las descripciones de los desórdenes mentales de uso de sustancias. (Véase nota núm. 18) *Diagnostic and Statistical Manual of Mental Disorders*, American Psychiatric Association, supra, págs. 175-183. El desorden de abuso de sustancias (desorden diagnosticado en Alicea Batlle) refleja unas características recurrentes. supra, pág. 182. La dependencia de sustancias también demuestra patrón, aunque más sintomático. supra, pág. 176, 178. Black´s Law Dictionary, West

están excluidas de la protección bajo la sección pertinente de la A.D.A y la Ley Núm. 44. La palabra "engaging" se refiere a las personas que reflejan algún patrón de uso ilegal de drogas. De otra parte, la frase "adicto activo" incluye a todo individuo que **actualmente**, al momento del patrono tomar la decisión de destitución, tiene el **hábito**, o sea, que está involucrado con cierta periodicidad, con el uso de cualquier droga narcótica, de forma tal que ponga en peligro la moral, salud, seguridad o bienestar público. Por consiguiente, el impedimento que trata de superar las disposiciones son los desórdenes de salud relacionados al uso de sustancias. (Véase esc. Núm. 9, 12 y 17.)

La Ley Núm. 44 expresamente adopta la definición de "drogas ilegales" de la Ley Federal de Sustancias Controladas. El estatuto federal, sin embargo, no define específicamente lo que son "drogas ilegales," aunque sí enumera y define lo que son las sustancias controladas. La Sec. 802 de 21 U.S.C.A. define sustancia controlada como "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter. The term does not include distilled spirits, wine, malt beverages, or tobacco as those terms are defined or used in subtitle E of the Internal Revenue Code of 1986." Aunque no hay una definición específica de "drogas ilegales",[39] se puede deducir que se trata de aquellas sustancias controladas utilizadas en contravención a lo dispuesto en el estatuto federal del "Uniform Controlled Substances Act", 21 U.S.C.A. § 801 et seq., y la ley local de sustancias controladas, 24 L.P.R.A. § 2201 et seq.

Como expresamos anteriormente, ambos estatutos excluyen de la protección a personas que **actualmente**, al momento del patrono tomar la decisión de destitución, tengan el **hábito**, o sea, que estén involucradas con cierta periodicidad, en el uso de cualquier droga narcótica de forma tal que ponga en peligro la moral, salud, seguridad o bienestar público. El momento del patrono tomar la decisión de destitución se refiere al momento de éste comenzar a movilizar la maquinaria disciplinaria contra el empleado, no cuando efectivamente se le impone el resultado de dicha movilización.

Además de la exclusión expresa, el estatuto federal enumera las circunstancias en que un individuo puede **cualificar** como uno con impedimento. La Ley Núm. 44 carece de dicha especificación, por lo que es de gran ayuda utilizar la enumeración de la A.D.A. para armonizar

---

Publishing Co., 1990 define la palabra "engage": "to employ or **involve** one´s self; to take part in". La frase "engaged in commerce" se extiende más allá de una actividad local aislada ("rather than an isolated local activity"). De similar manera, la frase "engaged in employment" significa "to be rendering service for employer under terms of employment, and is **more than being merely hired to commence work**". (Énfasis nuestro.)

39 Existe en los estatutos locales la definición de "droga o sustancia controlada" la cual incluye toda droga o sustancia comprendida en las Clasificaciones I y II de 24 L.P.R.A. § 2202, conocida como la "Ley de Sustancias Controladas de Puerto Rico", exceptuando el uso de sustancias controladas por prescripción médica u otro uso autorizado por ley. Ley Núm. 78 de 14 de agosto de 1997, 3 L.P.R.A. § 2501(d). **Estimamos, por ende, que toda droga dentro de las clasificaciones antes mencionadas que no se usen por prescripción médica o por uso autorizado por ley es ilegal.**

ambos preceptos. Entre las circunstancias para **cualificar** a un individuo con impedimento por el uso de drogas en A.D.A., 42 U.S.C.A. § 12114(b), están: (1) "[el que] haya completado exitosamente un programa supervisado de rehabilitación por drogas y ya no se involucre en el uso ilegal de drogas, o que de otra manera se haya rehabilitado exitosamente y ya no esté involucrado en dicho uso; (2) [el que] esté participando en un programa supervisado de rehabilitación y ya no esté involucrado en dicho uso, o; (3) [el que] erróneamente se considere como involucrado en dicho uso, pero no lo esté." (traducción nuestra.)40 El proceso de rehabilitación tiene que ser genuino y no un mero subterfugio para cualificar bajo A.D.A. y retener el empleo.41 La **cualificación** sólo está disponible en las circunstancias especificadas en A.D.A. Esto es, si el individuo vuelve a su adicción activa de drogas ilegales se **descualifica** como persona con impedimento (debemos recordar que el abuso y dependencia de sustancias se considera médicamente como un desorden de salud). Una vez el empleado **cualifica** como persona con impedimento bajo A.D.A, la **protección** se extiende a los actos previos derivados de su condición.42

III

Debido a la diligencia y responsabilidad que debe distinguir al empleado público, las consecuencias del uso de sustancias ilegales presentan un problema ocupacional serio y apremiante.43 No obstante, como ya expresáramos, los estatutos de la Ley Núm. 44 y A.D.A. proveen protección para que **no se perpetúen conceptos estereotipados de personas que usaron ilegalmente y con cierta periodicidad sustancias controladas, pero que al momento en que el**

---

40 "(1) has successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use; (2) is participating in a supervised rehabilitation program and is no longer engaging in such use; or (3) is erroneously regarded as engaging in such use, but is not engaging in such use." 42 U.S.C.A. § 12114(b).

41 El proceso genuino de rehabilitación se puede clasificar como tal de múltiples maneras, entre éstas: (1) asistencia regular al programa; (2) seguimiento o documentación médica; (3) abstinencia de uso de drogas ilegales durante el programa; (4) credibilidad médica del programa supervisado; (5) actitud del individuo que alegue cualificar.
42 Es menester puntualizar que una cosa es la **cualificación** de una persona bajo A.D.A. y otra diferente es la **protección** que A.D.A. y la Ley Núm. 44 ofrecen una vez el empleado **cualifica** como persona con impedimentos.

43 La doctrina médica denomina el uso de sustancias como "substance-use disorders". Estos desórdenes se dividen en dos: (1) dependencia de sustancias ("substance dependence"), y (2) abuso de sustancias ("substance abuse").
La persona que padece de abuso de sustancia puede demostrar intoxicación u otros síntomas relacionados con sustancias **al desempeñar sus obligaciones en el trabajo, escuela u hogar. Pueden haber ausencias repetidas o trabajo poco satisfactorio debido a la resaca ("hangover").**

**patrono toma la decisión de destituirlos están rehabilitadas o en proceso genuino de estarlo.** Los estatutos reconocen que se está ante un desorden controlable, la propia existencia de la protección estatutaria así lo demuestra. Las personas cubiertas por estos estatutos deben desempeñarse eficientemente en el trabajo, ya que, la protección no implica que el empleado recuperado, o en proceso genuino de recuperación, pueda desempeñarse de manera insatisfactoria. Lo que la protección sí implica es que, una vez rehabilitado o en proceso genuino de estarlo, el empleado **no puede ser penalizado porque en el pasado usó drogas ilegalmente** y su desempeño en el trabajo se vio afectado en esa etapa.

Pese a la vigencia de estos estatutos y de la extensa discusión médica que existe sobre los desórdenes del uso de sustancias controladas, la jurisprudencia federal ha descargado su energía en interpretar la exclusión general de la A.D.A., sin hacer distinción de los desórdenes de salud y tratando de determinar el tiempo que se requiere para poder solicitar la protección de A.D.A. desde la última vez que el empleado usó drogas hasta el momento del despido. En el caso de autos es irrelevante marcar este periodo de tiempo entre la última vez que Alicea-Batlle utilizó drogas y el momento del despido pues el inciso que se debe interpretar es el relativo al ingreso del empleado en un programa de rehabilitación. En este aspecto, existen pocos precedentes federales, estatales y locales sobre la cualificación y protección brindada a personas que están en proceso genuino de rehabilitación.

La mayoría se jacta en citar jurisprudencia de las distintas jurisdicciones federales para demostrar que no aplica la protección de la A.D.A. al caso de autos, lo que no consideran es que el inciso que debíamos interpretar es el del ingreso de empleado al programa de rehabilitación, y no meramente la exclusión general a que esta jurisprudencia federal hace referencia. La evasión de interpretar dicho inciso y refugiarse en jurisprudencia federal ilustrativa raya en cobardía. Es una cobardía lamentable que tiene el resultado de abandonar a un sector de la población que nuestra política pública llama a rehabilitar y nuestro estatuto local, la Ley Núm. 44, define. Además, fuerza a esos empleados mantener en secreto su estado rehabilitable.

Era nuestro deber, caso a caso, ir estableciendo los estándares de cualificación y protección al amparo de A.D.A. y de la Ley Núm. 44. Aquí nos correspondía definir la exclusión que establecen los estatutos analizados y determinar el alcance de la protección que expresamente se encuentra en la sección (2) dos del inciso (b) del artículo discutido de la A.D.A. según requiere nuestra particular necesidad y política pública, y en armonía con el estatuto local.

Para llegar a esto, teníamos que interpretar estos estatutos tomando en consideración el fin social que los inspiró, **sin desvincularlos de la realidad y del problema social humano que persiguen resolver.** Pueblo v. Zayas Rodríguez, res. de 17 de febrero de 1999, 99 T.S.P.R.

---

Por otro lado, las personas que padecen de dependencia de sustancia manifiestan comportamientos más severos. Véase, *Diagniostic and*

15, 99 J.T.S. 16, pág. 590; Pueblo v. Ferreira Morales, res. de 10 de diciembre de 1998, 98 J.T.S. 150, pág. 336; Colegio Ing. Agrim. V. A.A.A., 131 D.P.R. 735, 756 (1992).

En Puerto Rico, al igual que en Estados Unidos y muchos otros países, el uso de drogas y alcohol constituye un grave problema social que afecta todos los estratos y todas las fases de la vida comunitaria. El problema se refleja en el ámbito laboral en la misma proporción que en la población en general. Entre los medios que ha adoptado el Estado para enfrentarse a esta lacra social está la legislación encaminada a rehabilitar a las personas que padecen de esta condición. En la esfera obrero patronal, estos estatutos son un eslabón más en la cadena del esquema de rehabilitación y de protección que emana de nuestra legislación laboral.44 Este esquema tiene arraigo constitucional.45 A la luz de estas consideraciones, es forzoso concluir que el tratamiento de los problemas ocupacionales relacionados con el uso de alcohol y drogas tiene un fin rehabilitador y no punitivo.46 El Art. 23 de la Ley Núm. 78 de 14 de agosto de 1997 dispone que:

> [Las Ramas del Gobierno] adoptarán..., programas de detección de sustancias controladas con el **propósito de proveer tratamiento y rehabilitación a todos sus funcionarios y empleados**, irrespectivamente de que éstos hayan sido electos o designados. (Énfasis suplido.) 3 L.P.R.A. § 2520.

De otra parte, la Oficina de Servicios contra la Adicción tiene, entre otras, la siguiente función: "... (4) Habilitar47 para ocupar puestos públicos a personas inelegibles para el ingreso al servicio público, por... **haber sido adicto al uso habitual y excesivo de sustancias controladas** o bebidas alcohólicas,....". Ley Núm. 50 de 5 de agosto de 1993, 3 L.P.R.A. § 1323(b)(4).

---

*Statistical Manual of Mental Disorders*, *supra*, págs. 176-183.

44 Véase en particular, Piñero González v. A.A.A., Op. de 23 de octubre de 1998, 98 T.S.P.R. 141, 98 J.T.S. 140, págs. 214-215.

45 La Sec. 16 del Art. II de la Carta de Derechos de la Constitución del Estado Libre Asociado dispone que "se reconoce el derecho de todo trabajador... a **protección contra riesgos para su salud** o integridad personal en su trabajo o empleo". (Énfasis nuestro.) 1 L.P.R.A. § 16. "El propósito fundamental de esta sección es el [de] **proteger la salud**, la seguridad y la vida de la gran masa trabajadora" en Puerto Rico. (Énfasis nuestro.) Mun. Guaynabo v. Trib. Sup., 97 D.P.R. 545, 549 (1969).

46 Sobre la clara política pública de rehabilitación en Puerto Rico véase, Rivera Rivera v. Superintendente, Op. de 30 de junio de 1998, 98 T.S.P.R. 87, 98 J.T.S. 88, pág. 1270; *In re*: Gómez Morales, P.C. de 22 de octubre de 1998, 98 T.S.P.R. 139, 98 J.T.S. 142, pág. 241-242; Pueblo v. Moreu Merced, 130 D.P.R. 702, 709-710 (1992); Pueblo v. Tribunal, 104 D.P.R. 650, 653 (1976).
De modo ilustrativo, el modelo de la Ley de Drogas en los Estados expuso en un informe la importancia de crear un programa "to allow public employees who abuse alcohol and other drugs an opportunity to identify their problems and be referred to treatment **without the loss of employment.**" (Énfasis nuestro.) President´s Commission on Model State Drug Laws, *Drug-Free Families, Schools and Workplaces*, December 1993, p. 269.

47 "Habilitación" es el procedimiento para declarar elegible para ocupar un cargo o puesto público a una persona que de otra forma sería inelegible. Opinión del Secretario de Justicia Núm. 29 de 1989.

El Estado tiene un interés legítimo en establecer estrategias y programas que propendan a disuadir a los empleados públicos de consumir sustancias controladas en y fuera de los centros de trabajo y **en viabilizar** [sic] **la rehabilitación de aquellos empleados usuarios o con problemas de adicción**. (Énfasis nuestro.)  Soto v. Adm. de Inst. Juveniles, res. de 30 de junio de 1999, 99 T.S.P.R. 106, 99 J.T.S. 109, pág. 1259.48  La política del Estado, atendidas las circunstancias específicas de cada caso, es que los empleados públicos con problemas de uso de sustancias controladas sean referidos a un programa de rehabilitación. De esta manera tratan de mantenerlos como empleados productivos al margen del consumo de drogas.  Este principio de rehabilitación permea la política pública laboral de Puerto Rico.

La Orden Ejecutiva de 9 de octubre de 1986, Boletín Administrativo Núm. 4784 (en adelante Orden Ejecutiva 4784), discutida en Soto Ortega, *supra*, se refiere a empleados de Gobierno del área de seguridad pública, quienes están sujetos a exigencias laborales más rigurosas debido a la naturaleza de su trabajo.  Aun así, dicha Orden Ejecutiva 4784 dispone en su Art. 3(b) que "cuando se obtenga por **primera vez** un resultado positivo corroborado en un empleado o funcionario mediante una prueba para detectar la presencia de sustancias controladas, éste será referido al programa de orientación, tratamiento y rehabilitación establecido en el Art. 5 de esta Orden y **no se tomarán medidas disciplinarias en su contra**...." (Énfasis suplido.) De esta norma se exceptúa sólo a aquellos empleados [del área de seguridad pública] cuya "condición detectada resulte incompatible con el desempeño efectivo de las funciones y deberes del puesto que ocupa".  La Orden dispone además que **"no se tomarán medidas disciplinarias** contra el funcionario o empleado que **voluntariamente** se someta al programa de orientación, tratamiento y rehabilitación del Departamento de Servicios contra la Adicción....  [Sin embargo,] el Jefe de la agencia podrá iniciar aciones disciplinarias cuando el empleado o funcionario **se niegue** a participar en el programa...." (Énfasis suplido.)  Es decir, a los empleados que estén vinculados en el servicio de seguridad pública, se les da, por lo menos, una oportunidad de rehabilitarse antes de recurrir a la imposición de medidas disciplinarias.49  Con mayor razón, y como regla general, esa oportunidad de rehabilitación se le debe dar a los demás empleados públicos.50

---

48   Aquí interpretamos el alcance de la Orden Ejecutiva de 9 de octubre de 1986, Boletín Administrativo Núm. 4784, y si ésta estaba en conflicto con el programa establecido por la Administración de Instituciones Juveniles.

49   Estos casos se refieren a empleados públicos que dieron resultado positivo en la prueba que detecta el uso de sustancias controladas. Estimamos que en el caso de autos se aplica con más vehemencia la política pública rehabilitadora ya que el peticionario expresó su problema de adicción **voluntariamente** y estaba dispuesto a someterse a un programa de rehabilitación.  Esta es una actitud que se debe fomentar si se va a combatir de manera realista el problema de la adicción a sustancias controladas que confronta nuestra sociedad en general y la fuerza laboral en particular.

50   Para ilustrar la necesidad de vigorizar la política pública de rehabilitación, mostraremos los datos estadísticos de A.S.S.M.C.A. para los años 1998-1999 en la cede de evaluación y detoxificación: la tasa de

La política pública establecida en Puerto Rico mediante las leyes y las Órdenes Ejecutivas mencionadas anteriormente no está en conflicto ni con A.D.A. ni con su contraparte en la esfera local, la Ley Núm. 44, más bien las complementa. Sobre este particular, reiteradamente hemos expresado que cuando la legislación [o interpretación judicial] local es más beneficiosa para el empleado, no existe conflicto. Véase, Vega v. Yiyi Motors, Inc., res. el 30 de junio de 1998, 98 T.S.P.R. 95; 98 J.T.S. 97, pág. 1360. Estos asuntos fueron alarmantemente obviados en la opinión mayoritaria.

La Orden 4635-C, la cual Alicea Batlle alega A.S.E.M. violentó, se creó para fomentar el establecimiento en cada departamento, agencia gubernamental y corporación pública del Gobierno del Estado Libre Asociado de Puerto Rico de un programa de ayuda ocupacional a empleados con problemas de uso de alcohol y drogas. La Orden no está en conflicto ni con las disposiciones de A.D.A. ni con la Ley Núm. 44, simplemente las complementa al exhortar al patrono a utilizar programas de ayuda ocupacional en torno al problema del uso de alcohol y drogas por parte de sus empleados. Los propósitos que persiguen estos preceptos son perfectamente armonizables.

Es nuestro deber ineludible interpretar A.D.A. y la Ley Núm. 44 conforme a nuestra realidad social, de manera que se utilicen como mecanismos eficientes para tratar la drogodependencia o su abuso. El Informe de la Comisión para el Estudio de la Criminalidad y las Adicciones (C.E.C.A. por sus siglas)51 expone el resultado alarmante de un estudio reciente que indica que el 81% de los confinados jóvenes [por el abuso o dependencia a drogas] carecen de ocupación u oficio, y el 92% estaban desempleados al momento de su arresto. Véase pág. 3 del Informe. ¿Cómo hemos de mejorar dicha estadística si interpretamos los estatutos ante nos menospreciando la política pública de rehabilitación? El Informe expresa que cuando se utiliza un acercamiento "salubrista" para tratar los problemas asociados al uso de drogas, se obtienen resultados positivos. Véase pág. 4 del Informe. El Informe enfatiza que la adicción a drogas es un desorden mental crónico. **Facilitar el acceso a diversas modalidades de tratamiento es una medida de salud viable** y mucho más costo efectiva que las actividades exclusivamente policíacas. Véase pág. 4 del Informe.

---

retención fue 76.2%, la tasa que finalizó tratamiento fue 63%; el **18.4%** constituían reingresos; el 53.4% eran de 25 a 44 años de edad; el **34.69%** de la cede de evaluación son de jornada completa y el **57.68%** están desempleados; el **14.34%** de la cede de detoxificación son de jornada completa y el **51.11%** están desempleados; el 27.4% ingresaron voluntariamente a la cede de evaluación y el 80.3% a la cede de detoxificación; el 72.5% ingresaron a la cede de evaluación por presión legal y el 19.7% a la cede de detoxificación.
51 La Comisión es una organización sin fines de lucro que se dedica al análisis de los estudios realizados sobre este tema. Ésta fue constituida hace diez (10) años y la dirigen los doctores José Álvarez de Choudens y Salvador Santiago Negrón. Este Informe en particular se hizo para enero de 2000.

Era nuestro deber ineludible, crear estos parámetros para así combatir eficientemente el problema social que nos ocupa y que se expone en la sección pertinente de A.D.A., la Ley Núm. 44 y **nuestra** política pública de rehabilitación.

IV

En el caso de autos, el señor Alicea Batlle ejerció su trabajo satisfactoriamente hasta diciembre de 1993, fecha en que comenzó a tener problemas debido al abuso de drogas. En vez de esconder su problema o esperar que el mismo fuera detectado de manera involuntaria, Alicea Batlle, buscó ayuda, y **voluntariamente** se sinceró con su supervisor Bofill Marini. Solicitó autorización para ingresar en un programa de rehabilitación. **Dicha autorización fue concedida.** Resulta incongruente y contrario a la política pública de rehabilitación el que A.S.E.M., por un lado, aprobase el tratamiento y, por otro, posteriormente continuara de forma agresiva y hostigosa con el proceso disciplinario de destitución por las actuaciones anteriores del empleado relacionadas con su adicción. Tal parece que la mano derecha del patrono no sabía lo que hacía la izquierda, resultando en una actuación contradictoria en perjuicio del empleado y en menoscabo de la política pública laboral. Cabe señalar además que al tiempo en que ocurrieron algunas de las faltas señaladas (ausencias y tardanzas), inexplicablemente, consta en el expediente que Alicea Batlle se encontraba en una licencia sin sueldo.

La mayoría hace caso omiso a esta injusticia inherente que reflejan los hechos del caso de autos. ¿Cómo un patrono puede ir contra sus propios actos en perjuicio del empleado público? La mayoría así lo concedió.

Alicea Batlle cualificaba como un individuo con impedimento bajo la Sec. 12114 inciso (b)(2) de 42 U.S.C.A., porque al momento en que su patrono, A.S.E.M., tomó la decisión de movilizar la maquinaria disciplinaria contra el empleado, éste participaba genuinamente en un programa supervisado de rehabilitación y no existía evidencia alguna de que estaba usando drogas ilegalmente o que era adicto activo. Como **individuo cualificado,** la protección de los estatutos se extendía a actuaciones anteriores [a la cualificación] derivadas de su condición. Por ende, bajo estas circunstancias, la imposición de la medida disciplinaria de destitución resultó inválida pues se basaba en actos protegidos por A.D.A. y la Ley Núm. 44. No se podía aplicar la estipulación que Alicea Batlle se vio obligado a firmar para poder retener su empleo. Un patrono no puede forzar a un empleado que se encuentra bajo la protección que le brinda A.D.A. o la Ley Núm. 44 a renunciar a la misma como condición para continuar en su trabajo. Esto fue precisamente lo que sucedió en este caso cuando Alicea Batlle firmó la antes mencionada estipulación.

Lo dicho aquí, sin embargo, no significa que el patrono público se vea impedido o no pueda sancionar al empleado por trabajo realizado de manera insatisfactoria. El empleado

debe **ejercer su labor satisfactoriamente aun cuando cualifica para la protección que provee A.D.A. y la Ley Núm. 44.** La protección sólo se extiende a actuaciones que se derivaron de su problema de uso de drogas y que dieron lugar a que el patrono comenzara a ejercer la política pública de rehabilitación. Esto es, una vez el patrono da la oportunidad al empleado de rehabilitarse y éste, de todas maneras, realiza un trabajo insatisfactorio o continúa con su adicción activa a drogas, el patrono no está obligado a darle una nueva oportunidad de rehabilitación.52 Puede proceder entonces con la imposición de medidas disciplinarias contra el empleado público salvaguardando, claro está, las garantías el debido procedimiento de ley.

Del expediente surge con meridiana claridad que Alicea Batlle estaba en un proceso genuino de rehabilitación iniciado con la anuencia de su patrono. Al momento de A.S.E.M. movilizar la maquinaria disciplinaria contra Alicea Batlle por actuaciones ocurridas antes de éste someterse voluntariamente a un proceso genuino de rehabilitación, el peticionario cualificaba como persona con impedimento bajo A.D.A. Por consiguiente, la acción disciplinaria de destitución 53 constituía una penalidad por actuaciones que estaban protegidas por A.D.A. y la Ley Núm. 44. Entendemos que el error señalado se cometió.

V

Alicea Batlle cualificó como persona con impedimento bajo A.D.A. Por consiguiente, sus actos anteriores derivados de su condición de adicto que dieron lugar a la imposición de medidas disciplinarias estaban protegidos. Forzoso es concluir que bajo las circunstancias específicas de este caso, la estipulación de marras resulta inválida.

La estipulación que Alicea Batlle tuvo que firmar, so pena de perder su empleo, daba por ciertas *todas* las faltas impuestas contra él, pese a que ya había sido sancionado por algunas, que otras eran obviamente inmeritorias, y otras estaban protegidas bajo A.D.A. y la Ley Núm. 44. Se vio obligado a renunciar a su derecho a cuestionar mediante los mecanismos provistos en el Reglamento de Personal de A.S.E.M la **justificación** de la acción disciplinaria, y le tuvo que conceder a A.S.E.M. la facultad de despedirlo sumariamente. Bajo la estipulación, se dejó en suspenso la acción disciplinaria de destitución basada en eventos protegidos bajo A.D.A. y la Ley Núm. 44. Resulta ser contra el orden público el que un patrono se aproveche de su posición de poder para hacer renunciar al empleado al derecho de impugnar la justificación de su despido. El resultado inevitable de esta situación es que un empleado optaría por renunciar a su derecho de impugnar la justificación de su despido antes de perder

---

52 En cuanto a la "labor satisfactoria", si el empleado está trabajando **mientras participa en el programa de rehabilitación**, sólo debe exigírsele la labor que razonablemente pueda hacer alguien en su condición, es decir, satisfactoria para alguien en proceso genuino de rehabilitación.

su sustento diario e incurrir en gastos adicionales para llevar su causa de acción contra su patrono. Sería soslayar con un plumazo los adelantos estatutarios para erradicar discrímenes en el empleo.54

Por los fundamentos antes expuestos, disentimos de la opinión mayoritaria. Es preocupante el menosprecio mayoritario por velar que se cumpla efectivamente con la política pública de rehabilitación, de interpretar los estatutos según éstos se ajusten a nuestra particular realidad social y laboral, y, finalmente, dejar inalterada la injusticia inherente que existe en el caso de autos.

Miriam Naveira de Rodón<br>
Juez Asociada

---

53 Nos referimos tanto a la destitución dejada en suspenso como a la destitución basada en la estipulación. La estipulación partía de la premisa que la destitución suspendida era válida.

54 En Callicote v. Carlucci, 49 FEP Cases 430, 432 (1988), el Tribunal de Distrito del Distrito de Columbia determinó que era contrario a la política pública el que una empleada firmara un "last chance agreement" renunciando a su derecho de impugnar la justificación de su despido, cuando, al firmarlo, era prácticamente imposible cumplir con los términos de la estipulación.